Briggs v. Miller, 176 Wis. 321.

BRIGGS, Respondent, vs. MILLER, Appellant.

*December 14, 1921—March 14, 1922.*

*Contracts: Elements: Consideration: Unilateral contracts: Promise to indemnify past losses.*

1. A complaint which alleged that defendant, a public lecturer upon applied psychology, offered to the world that if any one who had at any time lost any money in any of his business ventures would disclose this fact he would at once pay the full loss, and that plaintiff had sustained such a loss by accepting a note indorsed by defendant in 1895, that he informed the defendant thereof and demanded payment, which was refused, does not state a cause of action.

2. The court had jurisdiction of the subject matter of the action, and as plaintiff relied upon a new contract and not upon the original note or indorsement, the statute of limitations was not a defense.

3. A demurrer to a complaint on the ground that the action was not commenced within the time limited by sec. 4222, Stats., will be overruled where it does not appear from the complaint when the cause of action accrued.

4. In an action based on an offer to reimburse any one for a loss sustained through defendant's business ventures, *held,* that the bringing to the attention of defendant the fact of his prior liability did not confer any benefit upon the plaintiff nor amount to a detriment to defendant.

5. In order that a contract may arise, three things must concur: first, the offer; second, the acceptance; and third, the consideration. Where the offer is directed to a class of persons there may be acceptance by an act, and the performance of the act may identify one of the parties, complete the contract, and amount to a consideration; but the one accepting must perform some act other than the mere acceptance, and either confer a benefit upon the promisor or suffer a detriment.

APPEAL from an order of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Reversed.*

Demurrer. The complaint set forth at considerable length that the defendant was a public lecturer upon "Applied Psychology;" that in order to create in the minds of the public the impression that he was absolutely honest,

fair, and sincere in his teaching of the subject, and as a
means of furthering the defendant's standing and reputa-
tion as a public speaker, and as a means of inducing the
public to have confidence in him, "the defendant caused to
be published to the world an offer that in the event that any
one whosoever should have at any time lost any money in
any of defendant's business ventures and who would come
forward and show to the defendant such fact, he, the de-
fendant, would immediately pay to such person the full
loss so sustained." It was then alleged that the defendant
started a certain business venture and that the plaintiff re-
ceived the promissory note of the defendant's company for
$1,200 for certain assets sold by the plaintiff to the defend-
ant's company, which note was indorsed by the defendant
personally; that said note was given on or about July 30,
1895, and was for $1,200, and was payable July 30, 1896;
that no part of the interest or principal had been paid, and
"that the principal of said note and interest thereon is a
loss to the plaintiff directly flowing from one of the de-
fendant's business ventures; that said business venture was
the O. E. Miller Hefnia Treatment Company, and the de-
fendant was president thereof. That shortly after the pub-
lication of the defendant's offer to the world as above
alleged, the plaintiff became advised thereof and did cause
the defendant to be presented with a statement of the fact
that the plaintiff had lost the above money through a busi-
ness venture of the defendant and that said money and no
part thereof had ever been paid to the plaintiff, and that
the plaintiff's attention had been called to the general offer
of the defendant above alleged, and that the plaintiff was
then and there accepting the offer of the defendant in pro-
ducing to him the facts regarding his loss growing out of
the defendant's said business venture; that said plaintiff
did then and there produce the facts regarding said loss to
the defendant and the defendant did then and there admit
the correctness of the same;" that the plaintiff demanded

that the defendant comply with his offer, which the defendant refused to do. Judgment was demanded for the sum of $1,200, together with interest thereon at the rate of six per cent. from the time of the loss, with costs and disbursements.

The defendant demurred to the complaint, first, on the ground that it appears upon the face thereof that the same does not state facts sufficient to constitute a cause of action; second, on the ground that the court had no jurisdiction of the subject of the action; third, on the ground that the action was not commenced within the time limited by sec. 4222 of the Statutes of Wisconsin for the year 1919.

From an order overruling the demurrer the defendant appeals.

For the appellant there was a brief by *Lenicheck, Boesel & Wickhem* of Milwaukee, and oral argument by *L. J. Lenicheck.*

For the respondent there was a brief by *Arthur H. Bartelt* and *Otjen & Otjen,* all of Milwaukee, and oral argument by *Mr. Bartelt.*

The following opinion was filed January 10, 1922:

ROSENBERRY, J.   The court clearly had jurisdiction of the subject matter of the action, and as plaintiff relies upon a new contract and not upon the original note or indorsement, it not appearing when the new contract was made, the order overruling the demurrer upon the second and third grounds assigned needs no further discussion. It is the contention of appellant that the complaint states no cause of action for two reasons:

First, no consideration is shown.

Second, the offer was to a limited class of persons; that is, to those who "should have at any time lost any money in any of defendant's business ventures," and the plaintiff has not shown himself to be one of that class.

On the part of the plaintiff it is claimed that the com-

plaint sets forth a unilateral contract which came into exist-
ence by reason of the performance of an act by the de-
fendant, to wit, by the defendant bringing to the plaintiff's
attention the fact of the indebtedness set out in the complaint
and that the performance of that act constituted an accept-
ance.    If it be assumed that the offer was one made with
the intention that it should become by acceptance a con-
tract and that it was properly accepted, the question then
arises whether or not there is a consideration sufficient to
support the contract.

"The requirement ordinarily stated for the sufficiency of
consideration to support a promise is, in substance, a detri-
ment incurred by the promisee or a benefit received by the
promisor at the request of the promisor.    For unilateral
contracts, which were the earliest recognized by the law
and may still be regarded as the typical form, the statement
is as accurate as a brief general statement can be." Willis-
ton, Contracts, § 102; *Drovers' Deposit Nat. Bank v. Tiche-
nor,* 156 Wis. 251, 145 N. W. 777, and cases cited.

The plaintiff contends that there was a consideration,
and that was the benefit derived by the defendant in that the
offer and acceptance tended to create in the minds of the
public the absolute honesty, fairness, and sincerity of those
interested in teaching applied psychology in order to inter-
est the public in the discussion and in order that the de-
fendant might have the financial benefit which would thus
accrue to him, it being alleged "that it was at all times
herein involved and is now essential for the successful con-
duct of the defendant's business as a public speaker on the
subject of 'Applied Psychology,' to create in the minds of
the public the definite, decided impression that said de-
fendant was and had been during his entire life absolutely
sincere, trustworthy, and unqualifiedly honest."    The diffi-
culty with the contention of the plaintiff is that the alleged
benefit proceeds not from the act performed in acceptance
of the offer, but rather from the performance by the de-

fendant of his promise.   The mere act of acceptance by bringing to the attention of the defendant the fact of his prior liability did not confer any benefit upon the plaintiff nor did it amount to a detriment to the defendant in a legal sense.   If the mere trouble involved in making an acceptance amounted to a consideration, then there would in every conceivable offer and acceptance be involved a consideration. In order that a contract may arise, three things must concur: first, the offer; second, the acceptance; and third, the consideration.   The case mainly relied upon by the plaintiff is *Carlill v. Carbolic Smoke Ball Co.* [1892] L. R. 2 Q. B. Div. 484.   In that case the defendants were proprietors and vendors of a medical preparation called the Carbolic Smoke Ball, and they inserted in the Pall Mall Gazette the following advertisement:

"100*l*. reward will be paid by the Carbolic Smoke Ball Company to any person who contracts the increasing epidemic influenza colds, or any disease caused by taking cold, after having used the ball three times daily for two weeks, according to the printed directions supplied with each ball. 1000*l*. is deposited with the Alliance Bank, Regent street, showing our sincerity in the matter."

The price of the ball was given as ten shillings, the price for refilling as five shillings.   The plaintiff read the advertisement and on the faith of it bought one of defendants' carbolic smoke balls and used it as directed from November 20 to January 17, 1892, when she was attacked by influenza.   She thereupon brought action against the defendants to recover the 100 pounds promised in their advertisement.   The defendants pleaded that there was no contract between the parties and other defenses.   The court said:

"It may be that, of the many readers of the advertisement, very few of the sensible ones would have entertained expectations that in the event of the smoke ball failing to act as a preventive against the disease, the defendants had any

intention to fulfil their attractive and alluring promise; but it must be remembered that such advertisements do not appeal so much to the wise and thoughtful as to the credulous and weak portions of the community; and if the vendor of an article, whether it be medicine smoke or anything else, with a view to increase its sale or use, thinks fit publicly to promise to all who buy or use it that, to those who shall not find it as surely efficacious as it is represented by him to be, he will pay a substantial sum of money, he must not be surprised if occasionally he is held to his promise.

"I notice that in the present case the promise is of 100*l.* *reward;* but the substance of the offer is to pay the named sum as compensation for the failure of the article to produce the guaranteed effect of the two weeks' daily use as directed. Such daily use was sufficient legal consideration to support the promise."

The benefit which was derived by the defendant in that case was the purchase of its product and the use of it by the plaintiff in the manner directed. The same is true in other cases of the same class. In the present case there was no use of anything by the plaintiff, nor did the plaintiff purchase anything, nor did the plaintiff perform any act other than the mere act of acceptance, which, as we have pointed out, does not amount to a consideration. That there may be an acceptance by an act, that the performance of the act may identify one of the parties, complete the contract, and amount to a consideration, there can be no doubt, a familiar instance being the offer of a reward for the performance of a certain act, and its performance by a party; but in those cases the one accepting performs some act other than the mere acceptance and either confers a benefit upon the promisor or suffers a detriment. The present case is clearly distinguishable from that class of cases.

We do not find it necessary to determine whether the defendant was one of the class of persons described in the offer.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer.

A motion for a rehearing was denied, with $25 costs, on March 14, 1922.