LARSON, Respondent, vs. SUPERIOR AUTO PARTS, INC.,
Appellant.

*February 7—March 5, 1957.*

264

For the appellant there was a brief by *Johnson, Fritschler, Barstow & Witkin* of Superior, and oral argument by *Barney B. Barstow*.

For the respondent there was a brief by *Crawford, Crawford & Cirilli* of Superior, and oral argument by *Raymond A. Crawford*.

STEINLE, J. Challenge is directed by the defendant, Superior Auto Parts, Inc., to the trial court's determination that the defendant's offer as contained in the agreement of January 30, 1947, between all of its stockholders (including plaintiff) to purchase the plaintiff's shares of stock, was a continuing one, and that it was in full force and effect when accepted by the plaintiff. The defendant submits that the evidence conclusively indicates that no continuing offer was ever intended. In the alternative it maintains, that if the offer is to be construed as a continuing one, then under the evidence it must be held that the offer was terminated before there was any acceptance of it.

On the former appeal this court held that while the agreement of January 30, 1947, was not enforceable as to the plaintiff with respect to binding him to sell his stock when he left the defendant's employ, for the reason that contrary to sec. 183.14, Stats., the restrictions of the contract were not stated upon the plaintiff's certificates of stock, nevertheless the defendant's promise could be treated as a continuing offer to buy, which, if accepted by the plaintiff before the offer was revoked, would ripen into a binding contract. Specifically

it was said (p. 620) : "We regard the corporation's promise to buy as such a continuing offer. It was never withdrawn by the corporation and was accepted by the respondent when his employment was terminated and he demanded the stipulated price for his stock." It is to be recognized that such observation pertained to the facts alleged in the complaint, which were to be taken as true when the sufficiency in law of the same was being tested on demurrer. By its answer the defendant denied all allegations and implications that the offer was a continuing one, and that it had not been terminated prior to the acceptance by the plaintiff. Such issues were tried and determined by the court. It is the rule that in a trial to the court, findings of fact will not be set aside on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Swazee v. Lee* (1951), 259 Wis. 136, 47 N. W. (2d) 733.

The defendant contends that since this court on the previous appeal determined that the contract was not enforceable as to the plaintiff in respect to compelling him to sell his stock, it may not be considered as a continuing offer to purchase it. In the light of the arguments presented on this appeal we have again considered the views expressed in the opinion on the former appeal with reference to this subject, and have concluded not to depart from what was there said to the effect that the contract could be a continuing offer to purchase the plaintiff's stock. That it was a continuing offer has now been determined as a fact by the trial court.

It is plain that the agreement itself constitutes an offer to purchase a stockholder's shares in the event that his employment with the defendant company is terminated, and provided that the company has a surplus as contemplated. The evidence indicates that Anderson, Kopito, and Larson each recognized that the offer was a continuing one. In 1948 Anderson and Kopito expressed to the defendant their desire

to sell their stock pursuant to the contract. Larson did so in 1954. Anderson and Kopito, however, were not in a position to compel a performance of the offer at the time, for the reason that they had not severed their services with the company. Defendant's position that Larson did not consider the offer as a continuing one is predicated on several bases, viz., (a) that Larson testified he "never made any acceptance because he was never offered any. Never made any offer for any stock," (b) for the reason that in a letter by Larson to the company and Kopito dated July 9, 1954, he stated that since his certificate did not contain the restriction in the by-laws, he considered that he need not first offer his stock for sale to the board of directors, (c) for the reason that in his letter of August 9, 1954, addressed to the defendant and Kopito wherein he demanded a purchase of his stock pursuant to the terms of the agreement, he made no reference to any acceptance of the offer, (d) his demand was in reality an offer and not an acceptance.

With reference to the first of these items it appears that the statements were made at a time when Larson was being examined as a witness with reference to his demand that the company purchase his stock. He had stated that he visited the company's place of business, and that in a discussion with Kopito had advised him that he wanted book value for his stock. Manifestly, the court construed his statement to mean that the company was unwilling to purchase his shares in accordance with the agreement. As to the second item, it does not appear that Larson inferred that he was at liberty to sell his shares to anyone. In another portion of the letter he specifically demanded that the company purchase his stock pursuant to the contract. As to the third item it is apparent from the very statement itself that demand was being made pursuant to the contract. As to the fourth item, it is considered that the acceptance of an offer need not be in any

particular form. The request of Larson to the company that it purchase his stock in accordance with the terms of the contract may well be considered an acceptance of the offer.

We find no merit to the contention that the court's finding to the effect that the offer was a continuing one, is contrary to the great weight and clear preponderance of the evidence.

With respect to its position that the offer was terminated prior to any acceptance thereof, the defendant points to the evidence that when Anderson and Kopito made their overtures for the sale of their stock to the company pursuant to the contract, the defendant took no action with regard to purchasing the same; that when the defendant did not purchase Anderson's stock, he sold part of it to another stockholder; that when the company did not purchase Kopito's stock, he did not attempt to force the defendant to comply with the contract; that the defendant purchased stock from a stockholder on a basis different than book value as contemplated by the contract. As we have already observed, neither Anderson nor Kopito at the time when they requested the company to purchase their stock, or sold any portion thereof to the company, was eligible to enforce compliance with the contract. The defendant was not required, therefore, to accede to the demands of Anderson and Kopito. The record indicates that Larson was the first eligible stockholder to make a demand that the company purchase stock under the contract.

While an offer may be revoked by a communication from the offeror to the offeree that the offeror no longer intends to enter into the proposed contract, providing the communication is received by the offeree before he has exercised his power of creating a contract by acceptance of the offer, *Frank v. Metropolitan Life Ins. Co.* (1938), 227 Wis. 613, 277 N. W. 643, from the evidence here it does not appear that the defendant, its officers, or agents at any time com-

municated to the interested stockholders an intention to withdraw or revoke the offer to purchase.

By deciding that the continuing offer of the defendant to purchase plaintiff's stock was in full force and effect when it was accepted by the plaintiff, the court impliedly determined that the offer had not been withdrawn or revoked. Such determination is not contrary to the great weight and clear preponderance of the evidence.

The defendant also contends that specific performance should have been denied for the reason that the enforcement of the offer would produce a harsh, inequitable, and oppressive result in view of the difference in the book value of the stock and the market value of the inventory. True, one of the general rules is that equitable relief will not be granted if under the circumstances of the case, the result of the specific performance would be harsh, inequitable, oppressive, or result in an unconscionable advantage to the plaintiff, even though the complainant has no intention of taking an unfair advantage, and even though the contract may be valid and enforceable at law. 49 Am. Jur., Specific Performance, p. 72, sec. 58. However, a contract is to be judged as of the time when it was entered into, and if fair when made, the fact that it has become a harsh one or less beneficial to the party sued, by the force of subsequent circumstances or changing events, will not necessarily prevent its specific performance, unless such change is in some way the fault of the party seeking its specific execution. 49 Am. Jur., Specific Performance, pp. 77, 78, sec. 63. The inadequacy of price which will defeat specific performance must be an inadequacy existing at the time the contract was made. 49 Am. Jur., Specific Performance, p. 81, sec. 65.

It clearly appears from the evidence that the contract in question when made was not harsh, inequitable, or oppressive. Parties may contract for the sale of stock at book value.

"The weight of authority is to the effect that a corporate by-law which requires the owner of the stock to give the other stockholders of the corporation, or the corporators, in case the corporation is empowered to purchase its own stock, an option to purchase the same at an agreed price or the then-existing book value before offering the stock for sale to an outsider, is a valid and reasonable restriction and binding upon the stockholders." *Doss v. Yingling* (1930), 95 Ind. App. 494, 500, 172 N. E. 801. Such rule manifestly applies whether the option to purchase is granted under a by-law or a contract.

It appears from the evidence that on May 31, 1954, the defendant company had a net worth of $95,844.98, with current assets of $105,085.79 and current liabilities of $9,240.81, thereby making it eligible under the contract to purchase the plaintiff's stock which according to book value was then worth $36,450.70.

As against the claims of the defendant, the trial court was entitled to weigh the equities in favor of the plaintiff. It does not appear that there was an abuse of discretion in the matter of the consideration and determination of the equities.

*By the Court.*—Judgment affirmed.

BROADFOOT, J., dissents.