Alice H. KOCINSKI, Plaintiff-Appellant,

v.

The HOME INSURANCE COMPANY, a foreign corporation, Robert S. Ondrejka, and City of Milwaukee, a Municipal Corporation, Defendants-Respondents.†

Court of Appeals

*No. 87–1640. Submitted on briefs September 6, 1988.—Decided November 29, 1988.*

(Also reported in 433 N.W.2d 654.)

† Petitions to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Alice H. Kocinski* of Milwaukee.

For the defendants-respondents, The Home Insurance Company and Robert S. Ondrejka, the cause was submitted on the briefs of *Piette, Knoll & Nelson, S.C.* by *Ronald L. Piette* of Milwaukee.

For the defendant-respondent, City of Milwaukee, the cause was submitted on the briefs of *Grant F. Langley* and *Scott G. Thomas* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Alice H. Kocinski appeals pro se from the trial court's order of July 17, 1987, which enforced a settlement agreement between her and the defendants Home Insurance Company, Robert S. Ondrejka, and the City of Milwaukee. There are three issues. First, whether a letter memorializing the settlement sent by Kocinski's attorney satisfies Rule 807.05, Stats., even though it was not personally signed by him. Second, whether subjecting the settlement to final approval by the Milwaukee Common Council

permitted Kocinski to reject the settlement prior to the Common Council's approval. Third, whether there is "newly discovered evidence," as that term is defined by Rule 805.15(3), Stats., warranting relief from the settlement under Rule 806.07(1)(b), Stats. For the reasons discussed below, we conclude that the letter satisfied Rule 807.05 and that the trial court did not abuse its discretion in determining that relief under Rule 806.07(1) was not warranted. However, because we cannot determine from the record whether Kocinski was bound by the settlement prior to the Common Council's approval, we reverse on that issue and remand for further proceedings.

## I.

This matter has its genesis in a September 3, 1982 boating accident on the Milwaukee River. Kocinski was a passenger on a boat operated by Ondrejka when it collided with a barge owned by the city. She sued Ondrejka, his insurance carrier, and the city for damages she allegedly sustained as a result of the collision. Following extensive discovery, Kocinski's attorneys worked out a settlement with the defendants. As her original attorney testified at a hearing before the trial court, Kocinski had orally agreed to the settlement during the course of two telephone conversations. The settlement was memorialized in an April 13, 1987 letter sent by Kocinski's lawyer to her and to counsel for the defendants. It recited, in material part:

Gentlemen and Ms. Kocinski:

This is to confirm our telephone conversations of Friday, April 10th, wherein it was agreed that this

matter is settled for a total payment to Alice Kocinski of $260,000.

It is my understanding that this is a full and final settlement of all of the claims of Alice Kocinski against all of the defendants in the case.

It is my understanding that the City of Milwaukee will pay a total of $170,750. It is further my understanding that [Home Insurance and Ondrejka] will pay a total of $89,750. Upon receipt of this money from the parties, Alice Kocinski will execute the required Releases.

Although I understand that [the deputy city attorney] must proceed through the Common Council for final approval of this payment, it is my understanding that this step will be accomplished as quickly as possible by [him].

. . .

If any of you have any disagreement with any part of this letter, please contact me immediately.

The next day the lawyer sent a letter correcting a minor error: Home Insurance was to pay $89,250 and the city was to pay $170,750; the total settlement figure of $260,000 remained the same. There was no dispute before the trial court that these letters accurately reflected the settlement agreement. They bore, however, the lawyer's rubber stamped—not handwritten—signature.

Shortly after receipt of the April 13 and April 14 letters, Kocinski changed her mind. On April 22, 1987, the senior partner of the law firm representing Kocinski sent the following letter to the judge then assigned to the case:

We attempted to settle this case and, with client's approval, accepted a settlement offer of $260,000.00. It included a cut in attorneys' fees and a cut in the Milwaukee County lien.

The client, who in the past has suffered from mental disability and who is on a disability payment because of that, has been improperly influenced by a close friend of hers and as a result has decided that she does not want the settlement. She has attempted to hire other counsel in town who, after hearing the facts, refused to substitute for me.

It is our intention at the scheduling conference on April 28th at 1:00 p.m. to try to elicit your help in convincing the client that it is in her best interest to accept this settlement and, lacking that, we will withdraw as counsel and ask the Court to allow the client time to try to obtain another attorney. However, I think it is in the best interest of the client that she accept the settlement. I hope that we will be successful in convincing her at that time.

The docket entries of proceedings before the trial court reveal that status conferences "re: settlement" were held on April 28 and May 4, 1987. On this latter date, Kocinski filed with the trial court a handwritten offer to settle the case for a net gain to her of $20,000 over the settlement to which she had previously agreed. On May 20 and 27, 1987, the defendants filed motions to enforce the settlement memorialized by the April 13 and 14 letters. On July 28, 1987, eleven days after the trial court entered its order enforcing the settlement, the Common Council approved the city's payment of its share.

## II.

Rule 807.05, Stats., provides:

> **Stipulations.** No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court and entered in the minutes or recorded by the reporter or made in writing and subscribed by the party to be bound thereby or the party's attorney.

Since the parties stipulated at the hearing before the trial court that Kocinski's attorney "authorized his signature to be stamped on the letter," we must determine whether that stamped signature satisfies the requirement that the letter be "subscribed."

Rule 807.05, Stats., whose language is substantially similar to sec. 241.02(1),[1] Stats., is "in the nature of a statute of frauds." *Adelmeyer v. Wisconsin Elec. Power Co.,* 135 Wis. 2d 367, 369, 400 N.W.2d 473, 473 (Ct. App. 1986). Like the statute of frauds, it is designed to avoid the difficulties inherent in oral agreements. *See id.* at 372, 400 N.W.2d at 475. As explained by the American Law Institute:

> The primary purpose of the Statute [of Frauds] is evidentiary, to require reliable evidence of the

---

[1]**241.02 Agreements, what must be written. (1)** In the following case every agreement shall be void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith:

(a) Every agreement that by its terms is not to be performed within one year from the making thereof.

(b) Every special promise to answer for the debt, default or miscarriage of another person.

(c) Every agreement, promise or undertaking made upon consideration of marriage, except mutual promises to marry.

existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made.

*Restatement (Second) of Contracts* sec. 131 comment c (1981). Rule 807.05 serves the same purpose. The requirement in Rule 807.05 that the writing be "subscribed" should be construed in the same way as the similar requirement in the statute of frauds:

> The traditional form of signature is of course the name of the signer, handwritten in ink. But initials, thumbprint or an arbitrary code sign may also be used; and the signature may be written in pencil, typed, printed, made with a rubber stamp, or impressed into the paper.

*Restatement (Second) Contracts* sec. 134 comment a. *See also Williston on Contracts* sec. 585 at 160–61 (3d ed. 1961).

The rule recognized by the *Restatement* is consistent with Wisconsin law. *Garton Toy Co. v. Buswell Lumber and Mfg. Co.,* 150 Wis. 341, 348, 136 N.W. 147, 150 (1912) (typewritten subscription valid under statute of frauds) (alternate holding); *Finlay v. Prescott,* 104 Wis. 614, 617, 80 N.W. 930, 931 (1899) ("Except as controlled by statute, a mark made for one's signature is good whether he can write or not ...."); *Mezchen v. More,* 54 Wis. 214, 11 N.W. 534 (1882) (printed name on summons complies with statute requiring summons to be "subscribed"). *See also McAbee v. Gerarden,* 187 Wis. 399, 403, 204 N.W. 484, 485 (1925) (authorized writing of party's name by another in party's presence as valid as party's own signature); *Scott v. Seaver,* 52 Wis. 175, 183, 8 N.W. 811, 813 (1881) (authorized writing of a party's name by another as valid as party's own signature); *Town of Medary v.*

*City of La Crosse,* 88 Wis. 2d 101, 107–10, 277 N.W.2d 310, 313–14 (Ct. App. 1979) (writing of property owner's name on annexation petition pursuant to a valid power of attorney satisfies statute requiring petition be "signed").

■

Kocinski argues that sec. 990.01(38), Stats., supports her contention that the word "subscription" in Rule 807.05, Stats., requires that the name be personally written. Sec. 990.01(38) provides:

> Signature. If the signature of any person is required by law it shall always be the handwriting of such person or if he is unable to write, his mark or his name written by some person at his request and in his presence.

This subsection, however, applies only where the statute under consideration requires a "signature." *Mezchen,* 54 Wis. at 217, 11 N.W. at 535; *Scott,* 52 Wis. at 183, 8 N.W. at 813. Whatever application it might have under that circumstance,[2] it does not apply here. The letters of April 13 and 14, 1987 were "subscribed" by Kocinski's attorney and memorialized a settlement to which she had agreed. They comply with Rule 807.05, Stats.

### III.

The next issue for consideration concerns the parties' understanding, as recited in the settlement, that the assistant city attorney representing Milwaukee "must proceed through the Common Council for final approval of [the city's payment of its portion of the settlement and] that this step will be accomplished

---

[2]*See,* for example, secs. 801.58(1), 893.45 and 971.20(10), Stats.

as quickly as possible" by him. The question is whether this permits Kocinski to withdraw from the agreement prior to that "final approval," which, as we have seen, came on July 28, 1987. As discussed below, a contract that is not illusory and is subject to a condition is not enforceable until that condition has been fulfilled. Thus, the trial court's July 17, 1987 order enforcing the settlement was, at the very least, premature because the Common Council had not yet approved it. Since we have determined that this case must be sent back to the trial court for findings on the nature of the settlement agreement, we must analyze the legal issues upon which the enforceability of that agreement depends.[3]

The Supreme Court has indicated that although settlement agreements under the aegis of Rule 807.05, Stats., "have occasionally been referred to as contracts, they are not governed by contract law" and may be set aside, in the court's discretion, for any of the reasons specified in Rule 806.07(1), Stats. *Burmeister v. Vondrachek,* 86 Wis. 2d 650, 664, 273 N.W.2d 242, 248 (1979). Apart from the ameliorating provisions of Rule 806.07, however, certain stipulations under Rule 807.05 "are entitled to all the sanctity of an ordinary contract." *Thayer v. Federal Life Ins. Co.,*

---

[3]Home Insurance and Ondrejka contend that we should not consider this issue inasmuch as it was not briefed before the trial court. Additionally, it was not directly addressed by the trial court in its oral decision. The lawyer retained by Kocinski to overturn the settlement, however, did raise the issue during the course of his oral argument. The circumstances here warrant our consideration of whether Kocinski was bound by the settlement agreement prior to her change of mind. *See State ex rel. Gen. Motors Corp. v. City of Oak Creek,* 49 Wis. 2d 299, 319, 182 N.W.2d 481, 491 (1971).

217 Wis. 282, 285, 258 N.W. 849, 850 (1935). Principles of contract law may thus illumine our inquiry.

■

A contract subject to a condition is not void "but [the condition] only delays the enforceability of the contract until the condition" has been satisfied. *Locke v. Bort,* 10 Wis. 2d 585, 588, 103 N.W.2d 555, 558 (1960).[4] As explained by *Williston:*

> The fact that no duty of performance on either side can arise until the happening of a condition does not, however, make the validity of the contract depend upon its happening. Whether there is a contract depends upon the right of the respective parties to enforce it in spite of an attempt by the other to revoke his promise. [Footnote omitted.]

*Williston* sec. 666 at 141.

■

There is a distinction (often blurred) between a condition *under a contract* (where, though there is a binding contract, performance is delayed until the condition is satisfied) and a condition *to the making of a contract* (where there is no contract until the condition is satisfied). *See Williston* sec. 666A at 141–43. As explained by Oliver Wendell Holmes, Jr., more than a century ago:

> If a condition is attached to the contract's coming into being, there is as yet no contract. Either party

---

[4]*Locke* refers to a "condition precedent." *Locke,* 10 Wis. 2d at 588, 103 N.W.2d at 558. The less than clear difference between a "condition precedent" and a "condition subsequent" has prompted a refinement of the terminology so that "condition" is now used to encompass both concepts. *Restatement (Second) Contracts* sec. 224 and the Reporter's note. We accept the *Restatement*'s approach.

may withdraw, at will, until the condition is determined.

O. W. Holmes, Jr., *The Common Law* 315 (1881).
■

An example of a condition under a contract is the "subject to financing" clause commonly found in the type of real estate contract discussed in *Locke. See Restatement (Second) Contracts* sec. 225 comment d, illustration 8. For an example of a condition to the making of a contract see *Parkview Gen. Hosp., Inc. v. Eppes,* 447 S.W.2d 487, 490–91 (Tex. Civ. App. 1969): "Where the parties to the proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed." Though the record is not clear whether the Common Council's approval here was meant to be a condition under the agreement or a condition to its making, there can be no agreement in either case if satisfaction of the condition turns "upon the whim or caprice of the party to be satisfied." *Williston* sec. 675A. Thus, although the example, "I will buy the Andy Warhol painting if I like it," can be construed as either a condition under a contract or, in Holmes' phrase, as a condition "to the contract's coming into being," Holmes at 315, the undertaking, no matter how construed, is illusory because, as Holmes put it, it makes "the promisor his own final judge." *Id.* at 316. But, if the party's dissatisfaction must be reasonable before he may either reject or withdraw from the agreement, the contract is real and not illusory because whether the condition has been fulfilled can be objectively assessed. *Restatement (Second) Con-*

*tracts* sec. 228. *See also Williston* secs. 675A and 675B. See also *Mattei v. Hopper,* 330 P.2d 625 (Cal. 1958) and *In re Wonderfair Stores, Inc. of Arizona,* 511 F.2d 1206 (9th Cir. 1975), which both recognize that the mere fact that one party to a contract conditions his performance on his "satisfaction" does not make the contract illusory.

Whether Kocinski is bound to the settlement prior to the Common Council's "final approval," turns on two questions: (1) whether the parties intended that the Common Council's approval be a condition to the making of the agreement (in which case there would be no contract until the Common Council had ratified the assistant city attorney's action), or (2) if that approval was intended to be a condition under a contract, whether the settlement agreement was illusory. The resolution of these issues depends on the parties' understanding of their agreement, *see Locke,* 10 Wis. 2d at 592–93, 103 N.W.2d at 560, and the nature of the Common Council's approval process. Thus, on one hand, the Common Council might have reserved to itself a purely ministerial role by either an express or tacit delegation to the city attorney of the power to settle so that its approval of the settlement recommendation would be merely a formality.[5] In that circumstance, the agreement would be non-illusory, and Kocinski could not withdraw from it. On the other hand, the Common Council might routinely sift and weigh the merits of each "settlement" de novo. If this

[5]The dissent recognizes that there are times when "[a] city attorney may bind the city to an agreement, and in some instances, he or she may do so to the same extent that any attorney may bind a client." *Dissent* at 753. Significantly, section 2–21 of the Milwaukee Code of Ordinances requires that the city attorney approve agreements with the city that involve more than $25,000.

were the case, Kocinski's right to withdraw would then turn on whether the parties envisioned that the Common Council's rejection must be "reasonable" or done in "good faith" and not on whim or caprice so that the legitimacy of the rejection could be objectively assessed. The paucity of the record as it now stands does not permit us to divine, either from the facts or by implication, a duty of reasonableness or good faith.

■ The document memorializing the settlement agreement is, unfortunately, less than clear on whether there was, or was not, a binding, non-illusory agreement. Although the April 13 letter describes the case as "settled" and speaks of a "full and final settlement," it also recites an "understanding" that the assistant city attorney "must proceed through the Common Council for final approval of this payment" while noting that "this step will be accomplished as quickly as possible." Since it can be fairly read in both ways, the parties' intent must be ascertained with the help of extrinsic evidence. *Patti v. Western Machine Co.*, 72 Wis. 2d 348, 351–52, 241 N.W.2d 158, 160 (1976). Unfortunately, the record is silent on the Common Council's settlement role as well as what the parties understood that role to be. The charter provision that sets the city's claim procedure is similarly of little help.[6] Since we may not speculate or go outside

---

[6]City of Milwaukee Charter, sec. 4–32: ∧

**Claims.** Whenever a claim against a city of the first class shall be settled by the common council, the reason for such action must be stated in writing and signed by the committee and entered upon the minutes of the proceedings of the common council. Whenever such settlement is made upon the recommendation of the city attorney or his assistant, or other legal officer, the reason therefor

the record to supply the missing pieces, this case must be remanded to the trial court for the taking of evidence on these questions.[7] *Cf. Locke,* 10 Wis. 2d at 592, 103 N.W.2d at 560.

IV. Although we remand this case to the trial court for its findings of fact and conclusions of law on whether Kocinski can withdraw from the agreed-to settlement prior to the Common Council's "final approval," we must consider whether she has established the existence of newly-discovered evidence that would entitle her to relief from the settlement agreement, since a reversal on this issue would make a remand unnecessary.

Kocinski submits that even if her settlement with the defendants is valid and enforceable, she is entitled to relief under Rule 806.07(1), Stats. That rule provides, in material part:

---

must be stated in writing, signed and filed with the city clerk, and published with the proceedings of the common council.

[7]The dissent's eloquent exegesis on municipal law misses the point. The dissent assumes that we have determined that "there was a binding settlement agreement between Kocinski, by her lawyer, and the City of Milwaukee, by the assistant city attorney." *Dissent* at 754. We have not. As we have explained, we cannot conclude from this record whether there was, or was not, a binding settlement agreement. Therefore, the matter must be remanded.

Home Insurance and Ondrejka argue that even if Kocinski may withdraw from the settlement prior to the Common Council's approval, that portion of her settlement with them should be upheld. That position is without merit. The settlement agreement memorialized by the April 13, 1987 letter was a package deal; Kocinski agreed to a $260,000 settlement. If any portion of the settlement fails, she will get less than the bargained for $260,000 and the settlement will fail *ab initio.*

> On motion and upon such terms as are just, the court may relieve a party ... from a ... stipulation for the following reasons: ... (b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3) ...

Rule 805.15(3), Stats., the standard that we must apply here even though there has not been a "trial," permits relief because of newly-discovered evidence subject to four conjunctive conditions: First, the evidence must have "come to the moving party's notice" after the parties entered into the stipulation. Second, the "moving party's failure to discover the evidence earlier did not arise from lack of diligence in seeking to discover it." Third, the newly-discovered evidence must be "material and not cumulative." Fourth, the "new evidence would probably change the result." The burden of establishing these elements lies with the party seeking relief. *Padek v. Thornton,* 3 Wis. 2d 334, 338, 88 N.W.2d 316, 318 (1958). Whether to grant relief is a matter within the trial court's discretion and will not be overturned on appeal unless that discretion is clearly abused. *In re Estate of Reist,* 91 Wis. 2d 209, 225–26, 281 N.W.2d 86, 93 (1979).

The crux of Kocinski's newly-discovered evidence claim is that although her original attorney knew that she had a ruptured bladder as a result of the accident, he was not aware of the severity of her bladder control problems, to the extent that she might need future surgery, and that he did not have her examined by a urologist.[8] Although Kocinski's original lawyer testi-

---

[8]Although Kocinski's pro se submissions before the court raise myriad, and rambling, allegations of "new evidence," her claim for relief from the judgment must be limited to the matters presented

fied at the hearing that he was not aware that she had to undergo self-catheterization four times a day, the test "is not what counsel knows or is aware of but what his client is or should be aware of." *Bear v. Kenosha County,* 22 Wis. 2d 92, 99, 125 N.W.2d 375, 380 (1963); *State v. Albright,* 98 Wis. 2d 663, 674, 298 N.W.2d 196, 202 (Ct. App. 1980).

Kocinski obviously knew of her incontinence problems. Additionally, she had been examined by an orthopedist retained by her original lawyer. The doctor's report notes the bladder rupture and subsequent repair. Kocinski has thus not established at least two of the prerequisites to relief under Rule 805.15(3), Stats.: (1) that she learned of the alleged newly-discovered evidence after April 13, 1987, the day the stipulation was memorialized, and (2) even if the urologist's evaluation of her condition, which was done after April 13, can be considered newly-discovered evidence, Kocinski has not demonstrated that the failure to have the evaluation done earlier "did not arise from a lack of diligence." Rule 805.15(3)(b). Again, the test is what Kocinski, rather than her lawyer, knew or should have known. *Bear,* 22 Wis. 2d at 99, 125 N.W.2d at 380; *Albright,* 98 Wis. 2d at 674, 298 N.W.2d at 202. *See also John Mohr & Sons, Inc. v. Jahnke,* 55 Wis. 2d 402, 407, 198 N.W.2d 363, 366 (1972) (Rule 805.15(3) "cannot be used as a cure for inadequate preparation for trial").[9]

to the trial court. *See Allen v. Allen,* 78 Wis. 2d 263, 270, 254 N.W.2d 244, 248 (1977).

[9]During the course of the proceedings before the trial court, Kocinski's original lawyer pointed out with commendable candor that if Kocinski had "a problem with our office, the proper thing to do is to hire a lawyer and sue us for malpractice."

Additionally, Kocinski has failed to demonstrate that any subsequent settlement (if this one is not enforceable) or that any trial (if the parties ultimately go to trial), would result in a recovery more favorable than the $260,000 settlement to which she had originally agreed. Accordingly, she has not shown that the "newly-discovered" evidence "would probably change the result," Rule 805.15(3)(d), Stats. The trial court did not abuse its discretion in finding that Kocinski did not satisfy her burden under Rule 806.07(1)(b), Stats.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded.

MOSER, P.J. (*dissenting*). I dissent. Because there is no clear factual dissertation in the majority opinion, I will supply the chronological data needed for an understanding of the one simple issue on this appeal. That issue is whether at any time a binding settlement agreement had been reached between Alice H. Kocinski and the City of Milwaukee.

| | |
|---|---|
| 9/3/82 | Kocinski was injured in a boating accident which occurred on the Milwaukee River. |
| 11/18/83 | Kocinski filed a statutory claim[1] for injury against the City of Milwaukee. |
| 8/24/84 | Kocinski sued the City, alleging negligence in the placement, operation, and control of a barge operated on the Milwaukee River which caused her the physical harm for which she sought damages. In her complaint, Kocinski alleged that she had served the proper notice of claim on the City and that it |

---

[1]*See* sec. 893.80, Stats.

did not disallow her claim.[2] The City's answer admitted these facts.

4/13/87 By letter, Kocinski's attorney offered to settle the claim against the City and its insurer for a total amount of $260,000. It was understood that the City would pay $170,750, and its insurer would pay the $89,950 balance. A pertinent part of the attorney's letter notes: "Although I understand that Mr. [C]onrad must proceed through the Common Council for final approval of this payment, it is my understanding that this step will be accomplished as quickly as possible by Mr. [C]onrad." Kocinski approved of this settlement offer.

4/13/87 Assistant City Attorney Conrad sent all involved counsel a letter regarding Kocinski's settlement proposal. The concluding sentence of Conrad's letter states: "This settlement agreement is subject to the approval of the common council of the city of Milwaukee."

4/13/87–
4/22/87 The record reflects that during this period, Kocinski had discussions with her attorneys in which she voiced her disapproval of the settlement terms. She wanted the offer of settlement revoked because it did not reflect a urinary incontinence problem which resulted from her boating accident. In light of this problem, Kocinski's attor-

---

[2]Section 893.80(1)(b), Stats., states in part: "Failure of the *appropriate body* to disallow [the claim] within 120 days after presentation is disallowance." [Emphasis added.]

746

neys sent a letter to the city attorney notifying him of her decision to revoke the offer.

4/22/87 The senior attorney of the firm representing Kocinski wrote a letter to the trial court which read in part "We attempted to settle this case and with client's approval, accepted a settlement offer of $260,000, etc." The attorney then requested a status conference and solicited the aid of the trial court in convincing Kocinski to reapprove the original settlement proposal. If Kocinski would not accept the proposal, the attorney noted that his firm would withdraw as her counsel.

5/22/87 The City's insurer filed a motion to enforce the settlement pursuant to statute.[3]

6/29/87 After a hearing on the motion to enforce the proposed settlement agreement, the trial court stated: "And the court, therefore, finds that the original settlement entered into, bearing the stamped signature of counsel for the plaintiff, is a binding settlement."

7/17/87 A written order was entered enforcing the "binding settlement."

[3]Sec. 807.05, Stats., provides:

**Stipulations.** No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court and entered in the minutes or recorded by the reporter or made in writing and subscribed by the party to be bound thereby or the party's attorney.

7/28/87 The common council of the City of Milwaukee accepted Kocinski's original offer of settlement. An amended resolution stated "the plaintiff's attorney has agreed to settle this action for the amount of $170,750 ... [and] ... the city attorney *recommends* and the *common council of the City deems it expeditious to accept such offer of settlement.*" [Emphasis added.] The common council resolved to accept Kocinski's original settlement offer "[i]n full and final settlement of [the] action upon receipt of either a properly executed release approved as to form and execution by the city attorney with a stipulation and order for dismissal of the court action or a court order enforcing the settlement of this action ...."

8/31/81 Kocinski filed a notice of her intention to appeal from the order which determined that there was a final settlement.

I disagree with Kocinski's argument that a stamped signature, as opposed to a handwritten signature, wants for a determination of a settlement agreement. I agree with the majority in this portion of their decision. A stamped signature will suffice to execute a settlement offer. However, I part company with the majority when they assume that there was a stipulated agreement between Kocinski and the City of Milwaukee to settle this lawsuit. I would hold that the trial court erred in determining that the proposal signed by Kocinski's attorney, but revoked by her prior to acceptance by the common council, was a binding settlement agreement. I would hold that the

proposal was an offer of settlement which was revoked by Kocinski before the only body competent to accept, that being the common council of the City of Milwaukee, did accept it. Thus, there was never a binding settlement agreement and it was improper for the trial court to employ the statutory enforcement procedures it did. I would therefore reverse the trial court's decision to enforce the settlement proposal as a binding agreement.

It is significant that the trial court record does not establish precisely when Kocinski's offer of settlement became an agreement or stipulation of settlement. The same is true of the majority opinion, which assumes a settlement agreement was reached, but remands this matter for evidence gathering to flesh out exactly when the agreement came into being. I submit that no amount of evidence would be able to show when the City accepted a settlement agreement, other than when the common council accepted a proposal which had already been revoked by Kocinski. The common council did not authorize any acceptance of or payment for Kocinski's April 13, 1987 offer of settlement until it adopted the July 28, 1987 resolution. This authorization occurred eleven days after the trial court entered an order affirming enforcement of the proposed settlement, and thirty days after the hearing in which the trial court ordered enforcement of that so-called settlement agreement.

I would hold that prior to April 22, 1987, the date Kocinski's attorney solicited the trial court's aid in convincing Kocinski to reapprove the proposed offer of settlement, Kocinski had revoked her offer of settlement. Thus, no binding settlement agreement was ever reached.

Stipulations are of two kinds. Some are merely admissions of fact which relieve an opposing party from the inconvenience of providing proof therefore.[4] The others have all the characteristics as concessions of some rights as a consideration for those secured.[5] Furthermore, stipulations are contracts made in the course of a judicial proceeding.[6] However, they are not contracts in the truest sense, because they may or may not be enforced by a court's approval, and they may be avoided only with the court's approval.[7] Therefore, contract law applies to offers and acceptances of stipulations that settle lawsuits as between the parties, and are subject only to the approval or disapproval of a trial court.

Blackstone writes that a contract is an agreement to do or not do a particular thing upon sufficient consideration.[8] Blackstone also states that an agreement is a mutual bargain necessitating at least two parties, each of *sufficient ability* to make a contract.[9] Holdsworth, another great English legal scholar, teaches that under the 19th century English common law, an offer to contract can be revoked at any time prior to acceptance.[10] Kent, who is hailed as the American Blackstone, writes that it is essential to the

---

[4]*Thayer v. Federal Life Ins. Co.,* 217 Wis. 282, 285, 258 N.W. 849, 850 (1935).

[5]*Id.*

[6]*State ex rel. S. Colonization Co. v. Circuit Court of St. Croix County,* 187 Wis. 1, 4, 203 N.W. 923, 925 (1925).

[7]*See* sec. 807.05, Stats; *Burmeister v. Vondrachek,* 86 Wis. 2d 650, 664, 273 N.W.2d 242, 248 (1979).

[8]II W. Blackstone, *Commentaries on the Laws of England* at 442 (Special ed. 1983).

[9]*Id.* (emphasis added).

[10]XV W. Holdsworth, *A History of English Law* at 456 (3d ed. 1965).

validity of a contract that it be made by parties *competent to contract,* and that it must be founded on sufficient consideration.[11] Finally, Holmes compliments Kent by stating that

> [o]ur law does not enforce every promise which a man may make. Promises made as ninety-nine promises out of a hundred are, by word of mouth or simple writing, are [sic] not binding unless there is a consideration for them. That is, ... unless the promisee has either conferred a benefit on the promisor, or incurred a detriment, as the inducement to the promise.[12]

When discussing bilateral contracts, Holmes states that an offer is a revocable and unaccepted communication of willingness to promise.[13] Furthermore, "[a] covenant is binding when it is delivered and accepted, whether it is read or not."[14] However, Holmes states that "[t]he principles governing revocation are wholly different. One to whom an offer is made has a right to assume that it remains open according to its terms until he has actual notice to the contrary."[15]

It can readily be seen that American contract law evinces the influence of its parent, the English common law. Thus, a bilateral contract exists between two or more *competent* parties when an offer is accepted and there is consideration. However, an offer can always be retracted or revoked before acceptance.

---

[11]II J. Kent, *Commentaries on American Law* at 364 (Special ed. 1986) (emphasis added).

[12]O.W. Holmes, Jr., *The Common Law & Other Writings* at 253 (Special ed. 1982).

[13]*Id.* at 305.

[14]*Id.* at 306.

[15]*Id.* at 306–07.

Wisconsin common law reflects these basic legal concepts.

A contract consists of an offer, its acceptance and consideration.[16] Contractual provisions agreed to by *competent parties* are valid and enforceable unless they violate either a statute, a rule of law or public policy.[17] In addition, it is a well-settled legal concept that an offer does not ripen into a contract if it is not accepted.[18] Furthermore, an offer may be revoked by a communication from the offeror to the offeree that the offeror no longer intends to enter into the proposed contract.[19] However, the revocation must occur before the offeree has accepted the offer.[20]

When addressing the subject of municipal contracts, McQuillin teaches that only the duly authorized officers, governing body or board can act on behalf of a city.[21] A valid contract with the municipality cannot otherwise be created.[22] Furthermore, a common council or governing body can act on behalf of a municipality only at a legal meeting, and as a representative board.[23] Generally, no officers or board other than a common council has the power to bind a

---

[16]*Briggs v. Miller,* 176 Wis. 321, 325, 186 N.W. 163, 164 (1922); *see also State v. Howell,* 141 Wis. 2d 58, 61, 414 N.W.2d 54, 56 (Ct. App. 1987).

[17]*Mullen v. Coolong,* 132 Wis. 2d 440, 454, 393 N.W.2d 110, 116 (Ct. App. 1986).

[18]*Kukuska v. Home Mut. Hail-Tornado Ins. Co.,* 204 Wis. 166, 170, 235 N.W. 403, 404 (1931).

[19]*Larson v. Superior Auto Parts, Inc.,* 275 Wis. 261, 270, 81 N.W.2d 505, 510 (1957).

[20]*Id.*

[21] 10 E. McQuillin, *The Law of Municipal Corporations* sec. 29.15 at 254 (rev. ed. 1987). [Hereinafter McQuillin.]

[22]*Id.*

[23]*Id.* at 254–55.

municipal corporation, unless duly empowered by statute, charter or authority conferred by the common council.[24] A city attorney may bind the city to an agreement, and in some instances, he or she may do so to the same extent that any attorney may bind a client.[25] Also, city officers may bind a municipal corporation if they act within their authority.[26] Finally, the scope of a city attorney's duties must be determined by local laws.[27]

I cite the above authority to refute the majority's conclusion that there was a settlement agreement between Kocinski and the City of Milwaukee, because settlement negotiations were between Kocinski, her lawyer, and the city attorney. I submit that the following illustrates beyond a doubt that the city attorney was and is *incompetent* to enter into any binding settlement agreement with Kocinski and her attorney. Under the constitution, statutes and common law of the State of Wisconsin, and the Milwaukee city charter and city ordinances, only the common council of the City of Milwaukee has such competence.

Wisconsin municipal corporations have no powers except those expressly conferred, or those necessarily implied from the powers conferred.[28] If legislative authority is wanting, municipal acts are void.[29] Furthermore, cities are creatures of the legislature and have only such powers as those expressly granted to them, and such others as are necessary to implement

[24]*Id.* at 255.

[25]*Id.*

[26] 3 McQuillin, sec. 12.126a at 478 (rev. ed. 1982).

[27]*Id.*, sec. 12.52a at 209.

[28]*Town of Swiss v. United States Nat'l Bank,* 196 Wis. 171, 173, 218 N.W. 842, 843 (1928).

[29]*Id.*

the expressly granted powers.[30] Wisconsin's "home-rule" constitutional amendment allows municipalities to determine their respective "local affairs," subject only to the constitution and those enactments of the legislature of statewide concern.[31] "Local affairs" include matters which primarily affect the people of a locality, in contrast to matters of statewide concern which affect residents of the entire state.[32] Thus, municipal officers have only such powers of statewide concern as those conferred upon them by our state constitution and state legislation.[33]

The majority opinion assumes that there was a binding settlement agreement between Kocinski, by her lawyer, and the City of Milwaukee, by the assistant city attorney. However, there is nothing in the record which establishes that the common council accepted the settlement offer before it was revoked. In fact, the record supports the opposite. The transcript of the July 29, 1987, hearing reveals that the assistant city attorney told the court that he had advised the Judiciary and Legislation Committee to withhold action on the resolution which would accept Kocinski's offer until after the judicial hearing. The record states in part:

> MR. [C]ONRAD: Your Honor, for the record, *the manner in which the City settles a case as required by law, is to submit the settlement to the Common Council for approval, and the council*

[30]*Schroeder v. City of Clintonville*, 90 Wis. 2d 457, 464–65, 280 N.W.2d 166, 169 (1979).

[31]*Wisconsin's Envtl. Decade, Inc. v. DNR*, 85 Wis. 2d 518, 530, 271 N.W.2d 69, 74 (1978).

[32]*Id.*

[33]*See Pugnier v. Ramharter*, 275 Wis. 70, 73, 81 N.W.2d 38, 40 (1957).

*refers the settlement to the Judiciary and Legislation Committee, who view it, and then if it approves it, it sends it to the Common Council for final approval;* and then after that the checks are drawn, the document is executed.

In the case, once I received the letter from Mr. Kuphall, confirming the terms of the settlement, I opened a file entitled settlement in the case of Alice Kocinski, or words to that effect, and sent that file to the Common Council. The Common Council adopted the file and referred it to the Judiciary and Legislation Committee for approval. Before the committee met, I received a letter from Mr. Habush indicating that [Kocinski] no longer wanted the settlement. We now have an issue raised as to whether or not we had a settlement. In light of the circumstances I then called the chairman of that committee and asked him to hold the file, to call it off until this issue was resolved. I think the issue is not germane here because it is not a question of the plaintiff attempting to bind the city to the settlement, rather it is an issue of the city attempting to bind the plaintiff. *The fact is when the plaintiff agreed to settle this case, the city of course, can't instantly resolve the matter and issue checks. It has to go through its formal procedures.* [Emphasis added.]

It should be noted that nowhere in the record does Mr. Conrad state that he had the *authority* or the *competency* to accept Kocinski's offer of settlement. The fact of the matter is that Conrad cannot espouse such authority because neither he nor his superior, the elected city attorney, has any *authority* or *competency* to settle lawsuits of the financial magnitude presented by the Kocinski case. Such a case can only be settled by a majority vote of the common council.

The council derives its authority to so act from the Wisconsin constitution, state statutes, the Milwaukee charter ordinances and the Milwaukee Code of Ordinances.

Wisconsin's municipal "home rule" amendment gives cities local control over local issues, but retains legislative power to respond to statewide issues for uniformity in policies which affect the entire state.[34] Thus, the legislature has required that any measure which appropriates or disburses monies, and thus creates any liability or charge against a city must be accomplished by the "ayes and noes" vote recorded in the municipal journal.[35] Such a vote must be accomplished at a regular meeting of the governing body for the municipality.[36] Except when specifically restricted by statute, the common council has management and control of city finances, and may carry out this management power by levying taxes.[37] Also, unless otherwise authorized by law, a city fund may be paid out only by authority of the common council.[38]

Section 62.12(8)(a), Stats., provides that

> All claims and demands against the city shall be itemized and filed with the clerk, who shall deliver the same to the comptroller for examination. The comptroller shall within 30 days thereafter examine such claim or demand and return the same to the clerk with his report thereon in writing, who shall place the same before the council for action at its next meeting.[39]

---

[34]Wis. Const. art. XI, sec. 3(1).
[35]Sec. 62.11(3)(d), Stats.
[36]Sec. 62.11(2), Stats.
[37]Sec. 62.11(5), Stats.
[38]Sec. 62.12(6)(a), Stats.
[39]Sec. 62.12(8)(a), Stats.

Furthermore, no action against the city may be brought against the city upon a claim or cause of action unless it complies with statutory notice provisions.[40] While not an issue in this case, a claim of injury must be made within 120 days of the event giving rise to the injury.[41] If the city council fails to disallow a claim within 120 days after its initiation, the inaction is deemed a disallowance.[42] No court case or cause of action can be commenced against the city after six months have passed since service of notice of a claim of injury.[43] While these are not problems in this case, they provide additional support for my thesis that it is the common council, and not the city attorney, who has the competency and authority to settle claims.

It should be noted that a city attorney is declared by law to be a city officer.[44] The legislature has established the following duties for all city attorneys in this state:

> (a) The attorney shall conduct all the law business in which the city is interested.
> . . . .
> (c) He shall when requested by city officers give written legal opinions, which shall be filed with the clerk.
> (d) He shall draft ordinances, bonds and other instruments as may be required by city officers.

---

[40]Sec. 62.25(1), Stats.
[41]Sec. 893.80(1)(a), Stats.
[42]Sec. 893.80(1)(b), Stats.
[43]*Id.*
[44]Sec. 62.09(1), Stats.

(e) He shall examine the tax and assessment rolls and other tax proceedings, and advise the proper city officers in regard thereto.

(f) He may appoint an assistant, who shall have power to perform his duties and for whose acts he shall be responsible to the city. Such assistant shall receive no compensation from the city, unless previously provided by ordinance.

(g) The council may employ and compensate special counsel to assist in or take charge of any matter in which the city is interested.[45]

Other city attorney duties exist which are not of consequence to the matter before this court.[46] Ultimately, a city attorney is bound to act in the best interests of the city in the defense of its lawsuits.[47]

The above review of legislation surveys state law and provides two conclusions. First, only the common council of a city controls its finances. It alone can levy taxes to obtain monies needed to run the city government, and it alone can appropriate and disburse monies obtained in that matter. Second, only the common council is *competent* and has the *capacity* to settle any claim or cause of action against the city. In short, state law gives no authority to a city attorney to settle claims or lawsuits against the city, or to disburse city funds in settlement of claims or lawsuits. Because no such authority was vested in the city attorney involved here, and because the city council did not adopt the resolution accepting the city attorney's *recommendation of acceptance* of Kocinski's

---

[45]Sec. 62.09(12),Stats.

[46]Other statutory duties not germane to the cause of action involved are found in secs. 27.14 and 48.09, Stats.

[47]*Coste v. City of Superior,* 231 F. Supp. 261, 264 (W.D. Wis. 1964), *aff'd,* 343 F.2d 100 (7th Cir. 1965)).

settlement offer *before* she revoked it, the trial court erred in holding that there was a binding settlement, and that Kocinski was therefore bound by its terms.

We must also look to the charter and general ordinances of the City of Milwaukee to see if they delegate settlement authority to a city attorney. According to the Milwaukee City Charter (MCC), the common council has complete control and management of the city's finances[48] and no resolution of appropriation which may create a debt or liability against the city, or which may create a charge on any fund, can be adopted without a majority vote of all the members of the common council.[49] Furthermore, resolutions of appropriation creating a charge against any of the funds of the City of Milwaukee are transferred to the appropriate common council committee, which reports back to the entire council.[50] Generally, the council will not vote on the subject of a committee report the day the report is submitted.[51] The MCC also provides the following:

> **Claims.** Whenever a claim against a city of the first class *shall be settled by the common council,* the reason for such action must be stated in writing and signed by the committee and entered upon the minutes of the proceedings of the common council. *Whenever such settlement is made upon the recommendation of the city attorney or his*

---

[48]Milwaukee City Charter, sec. 4–10 (1988).

[49]*Id.,* sec. 4–06; *see also* sec. 3–19.

[50]*Id.,* sec. 4–21; *see also* Milwaukee Common Council Procedure and Rules, Art. IV sec. 2; *see also id.* at Art. VI sec. 3(b) which requires that upon receipt of a proposed claim or court suit, the file must be sent to the Committee on Judiciary and Legislation for its recommendation.

[51]Milwaukee City Charter, sec. 4–21 (1988).

*assistant, or other legal officer,* the reason therefor must be stated in writing, signed and filed with the city clerk, and published with the proceedings of the common council. [Emphasis added.][52]

All funds for the City of Milwaukee are under the control of its common council, and may only be disbursed upon order of the mayor and the city clerk, who are authorized to act only by majority vote of the common council.[53] No expenditure of city monies may be made and no liabilities may be incurred by the city unless authorized by the MCC.[54] By resolution and majority vote, the common council may direct the proper officers to expend sums of money as are specifically appropriated out of a specific fund for enumerated purposes.[55]

The duties and powers assigned to the city attorney by the MCC are as follows:

**City Attorney: Duties and Powers.** The city attorney shall conduct all the law business of the corporation and of the departments thereof, and all other law business in which the city shall be interested, when so ordered by the common council. He shall, when required, furnish written opinions upon subjects submitted to him by the mayor or the common council, or any of its committees, or any other department of the municipal government. He shall keep a docket of the cases to which the city may be a party in any court of record as directed by the common council, in which shall be briefly entered all steps taken in each cause, and which shall, at all times, be open to the inspection

[52]*Id.,* sec. 4–32.
[53]*Id.,* sec. 18–01.
[54]*Id.,* sec. 18–06(1). ·
[55]*Id.,* sec. 18–06(6).

of the mayor, comptroller or any committee of the common council. It shall also be the duty of the city attorney to *draft* ordinances, bonds, *contracts, leases, conveyances, and other such instruments of writing as may be required by the business of the city;* to examine and inspect tax and assessment rolls, and all proceedings in reference to the levying and collection of taxes and assessments; and to perform such other duties as may be prescribed by the charter and ordinances of the city. He shall have power to appoint 3 deputy city attorneys, who shall be authorized to do all acts required by law of the city attorney. *Assistant city attorneys appointed by the city attorney pursuant to city service laws and provisions shall be authorized, subject to the control and supervision of the city attorney or his deputies to do all acts required by law of the city attorney;* provided, that the city attorney shall be responsible to the city for all the acts of such deputy city attorneys and assistant city attorneys.[56] [Emphasis added.]

No MCC ordinances conflict with either Wisconsin's municipal "home rule" amendment or state statutes. The charter ordinances clearly state that the common council has complete control over the expenditure of monies involved in any claim such as Kocinski's. The city attorney has no such power or capacity. It follows that only a majority vote of the common council can settle a claim involved in a lawsuit such as this, and it is the only municipal body with the authority and capacity to expend funds for the payment of legal claims.

[56]*Id.,* sec. 3–03. (Irrelevant issues concerning vacancy of the office and appointment of assistants are discussed in secs. 3–04 and 3–05 respectively.)

There are two general city ordinances which are pertinent to the issues in this case, and they deal with the city attorney's assigned function. Section 2–21 of the Milwaukee Code of Ordinances provides that "[n]o agreement, contract or instrument whatsoever shall be approved by the common council, nor shall [it] be executed by officers of the city or by any other person authorized by the common council which involves any transfer of property or expenditure of monies of more than $25,000 unless the city attorney approves the provisions of the agreement, contract or instrument."[57] Section 2–20 of the general ordinances provides that the common council has granted the city attorney the authority to administratively settle all claims against the city not in excess of $2,500,[58] but anyone who is aggrieved with the city attorney's position has a right of review before both the Committee on Judiciary and Legislation and the common council.[59]

The Milwaukee city ordinances, coupled with state law, clearly illustrate that the City of Milwaukee

---

[57]Milwaukee Code of Ordinances, sec. 2–21 (1979).

[58]*Id.*, sec. 2–20.4 which reads in part as follows:

(1) Authority. In furtherance of the city policy of providing prompt, efficient, fair and equitable evaluation and disposition of claims against it, the city attorney is authorized to investigate and make settlement of claims not in excess of $2,500, hereafter referred to as small claims; to investigate and make settlements not in excess of $2,500 of claims in excess of $2,500 [sic]; and to investigate and negotiate settlement of motor vehicle liability claims.

(This section of the City of Milwaukee general ordinances of 1979 was amended November 11, 1985, as Ordinance No. 161. This amendment is not printed in the Code of Ordinances as the code is presently being updated in looseleaf format.)

[59]*Id.*, sec. 2–20.4(3).

can settle a lawsuit by stipulation. Furthermore, while the city attorney is authorized by the common council to administratively settle small claims under $2,500, he has no general ordinance, charter ordinance, statutory or constitutional power or authority to settle lawsuits over the amount of $2,500. Only the city council, by a majority vote of its members, can settle a lawsuit or claim, appropriate settlement monies, and authorize the expenditure of the monies. The council, and only the council, has the authority, competency and *capacity* to settle a claim such as that raised by Kocinski. The city attorney has no such power, because he only has the authority to *recommend* settlement of claims over $2,500.

Because Kocinski's April 14, 1987, offer of settlement was revoked prior to April 22, and because the City by majority vote of its members did not accept Kocinski's offer of settlement until it adopted accepting the offer of settlement on July 28, 1987, there was no binding settlement agreement. Therefore, I would hold that the trial court was in error for holding that there was a binding settlement agreement between Kocinski and the City of Milwaukee.

I reject the holding of the trial court and the majority of this court that evidence of Kocinski's permanent urinary incontinence problems were not newly discovered evidence under sec. 806.07(1), Stats. Kocinski's case was never settled, and thus she is entitled to prove that she sustained permanent urinary incontinence problems that were not considered in her revoked offer to settle the lawsuit.

For these reasons I dissent and would reverse the trial court and remand this matter for trial.