KUKUSKA, Respondent, vs. HOME MUTUAL HAIL-TORNADO INSURANCE COMPANY, Appellant.

*February 12—March 10, 1931.*

The cause was submitted for the appellant on the brief of *Albert H. Krugmeier* and *Joseph Witmer,* both of Appleton, and for the respondent on that of *Theodore A. Waller* of Ellsworth and *Knowles & Doolittle* of River Falls.

ROSENBERRY, C. J. Under the circumstances disclosed by the evidence in this case, the transaction should be treated as if the plaintiff had paid the agent Grimm the policy fee and premium in cash. Grimm extended credit in accordance with the usual course of business between him and the plaintiff and it was treated as a cash transaction.

The question presented for solution is, under the circumstances of this case, was defendant liable to the plaintiff in damages? As indicated by the trial court, the weight of authority undoubtedly is that an insurer may be held liable under such circumstances in the amount of the actual damage sustained by the applicant. See 15 A. L. R. note, p. 1026; 27 A. L. R. note, p. 444; 3 Couch, Insurance, § 572. *Contra, Savage v. Prudential Life Ins. Co. of America* (1928) 154 Miss. 89, 121 South. 487; *National Union F. Ins. Co. v. School District* (1916) 122 Ark. 179, 182 S. W. 547, L. R. A. 1916 D, 238. The leading cases holding the insurer liable for negligence are *Boyer v. State Farmers Mut. Hail Ins. Co.* (1912) 86 Kan. 442, 121 Pac. 329, 40 L. R. A. N. S. 164, and *Duffie v. Bankers' Life Asso.* (1913) 160 Iowa, 19, 139 N. W. 1087, 1090, 46 L. R. A. N. S. 25. The leading cases dealing with the matter on the contract basis are *Northwestern Mut. Life Ins. Co. v. Neafus,* 145 Ky. 563, 140 S. W. 1026, 36 L. R. A. N. S. 1211, and *Dorman v. Connecticut Fire Ins. Co.* (1914) 41 Okla. 509, 139 Pac. 262, 51 L. R. A. N. S. 873. See 40 Yale Law Journal, 121 (1931), for helpful comment with analysis of authorities.

It is a well established principle of the law of contracts that an offer does not ripen into a contract unless accepted; that if the offeree within a reasonable time does not accept the offer, it may be treated as if rejected. In accordance with these established principles, the conclusion is reached in a number of cases that failure to act upon an application results in no liability because there is no contract of insurance.

A consideration of the cases in which questions of this character have arisen discloses the fact that courts have had more difficulty in ascertaining the correct basis of liability than in holding an insurer liable under such circumstances.

The supreme court of the state of Iowa has in part predicated liability of the insurer upon the ground that the insurer is acting under a franchise from the state. In *Duffie v. Bankers' Life Asso., supra,* it is said:

"The legislative policy, in granting this (franchise), proceeds on the theory that chartering such association is in the interest of the public, to the end that indemnity on specific contingencies shall be provided those who are eligible and desire it, and for their protection the state regulates, inspects, and supervises their business. Having solicited applications for insurance, and having so obtained them and received payment of the fees or premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish, or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon, or suffer the consequences flowing from their neglect so to do."

Admitting all this, it is difficult to see the connection between the fact that the insurer enjoys a corporate franchise and its duty to act in a particular case. If the insurer were a person instead of a corporation, the duty to act would be the same under the same circumstances. In cases like this, the duty springs from the consensual acts of the parties and the surrounding circumstances rather than any specific provision of law applicable to the holder of the franchise as such.

It is significant that the insured does not take the first step in the process which leads to the making of a contract of insurance. Before one can hold himself out as competent to transact the business of insurance he must have fully complied with the statutes of the state relating to insurance (sec. 209.11). In this case the insurer had adopted a by-law prescribing the terms and conditions upon which a person might become a member of and be insured by the defendant company. It required the application to be made

upon blanks furnished by it. By the terms of the application, which was required to be made according to the by-laws, the applicant agreed to pay all just assessments and to be governed and abide by the rules, regulations, and by-laws of the company. He was required to pay the amount of the premium in advance. If the application were accepted, he agreed that the policy should run from the date of the application, July 2, 1928, rather than from the date of the acceptance when made. By the soliciting, making, and receiving of the application, the parties had entered into some kind of a consensual relationship. By the terms of the application it was not to ripen into a contract until the application was approved. But for this language in the application it might be held that the failure to act within a reasonable time resulted in approval. It is so held where a statement of account is rendered and no objection is made within a reasonable time. 3 Williston, Contracts, p. 3187, § 1863. The result follows where there is a duty on the part of the offeree to act and he fails to do so. See 1 Williston, Contracts, pp. 168 *et seq.*, §§ 91 and 91a.

Under such circumstances, having in view the nature of the risk against which the insurer seeks protection, is there not a duty upon the insurer to act upon the application within a reasonable time? Can the insurer, having pre-empted the field, retain control of the situation and the applicant's funds indefinitely? Does not the very nature of the transaction impose upon the insurer a duty to act? It is considered that there is a duty. If the insurer is under such a duty and fails to perform the duty within a reasonable time and, as a consequence, the applicant sustains damage, it is not vastly important that the legal relationship be placed in a particular category. If we say it is contractual, that is, there is an implied agreement under the circumstances on the part of the insurer to act within a reasonable time; or having a duty to act, the insurer negligently fails

in the performance of that duty; or that the duty springs
out of a consensual relationship, and is therefore in the
nature of a quasi-contractual liability, is not vitally im-
portant. Each view finds some support in the cases. It
seems to be more in accord with ordinary legal concepts to
say that it is a quasi-contractual duty. The legal conse-
quences may be somewhat different in each case; no doubt
they would be widely variant under a system of pleading
different than that which prevails here. The consequent
liability to respond in damages is the same in each case.

What constitutes a reasonable time must in this, as in all
other cases where the question is involved, except in clear
cases, be a question of fact. An organization of farmers
who are associated merely for the purpose of mutual pro-
tection rather than for profit, which maintains no regular
office or office hours, whose active officers are engaged prin-
cipally in some other line of business and are not infre-
quently absent from their places of business as well as their
homes, it being generally understood that the business
should be attended to as reasonable opportunity offers, could
not be charged with the same degree of diligence as an
insurer organized for the purpose of profit, conducting a
business organization. Each situation must be dealt with
upon its own facts and due weight be given to all considera-
tions which operate in a particular case.

The finding of fact made by the court in this case is
amply supported by the evidence. The defendant did noth-
ing about the application pending its meeting on July 7th.
On July 10th it wrote its agent, who replied on July 12th.
Nothing further happened until the policies were returned
to the agent on July 25th, nearly two weeks later. The
plaintiff had no notice until the day of the loss. So that
upon any theory, the defendant would be liable to the plaint-
iff for the amount of damages sustained where it appeared,
as the court found in this case, that had he been seasonably

notified, other insurance could have been readily obtained. The amount of damage for which the defendant could be liable under such circumstances could not exceed the amount of insurance applied for. That would measure the utmost limits of the defendant's liability for failure to act, because if it had acted its liability would have been so limited.

*By the Court.*—Judgment affirmed.