David L. **MEREDITH,** John Guddendorf, Ivar Kizans, et al., Plaintiffs–Appellants,

v.

**ALLSTEEL, INCORPORATED** and Dan T. Cosgrove, in his capacity as Plan Administrator, Defendants–Appellees.

No. 92–3997.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 20, 1993.

Decided Dec. 8, 1993.

Rehearing Denied Jan. 10, 1994.

---

Thomas H. Geoghegan, Leon M. Despres, Robert C. Drizin, Despres, Schwartz & Geoghegan, R. Edward Wilhoite, Jr. (argued), Lerner & Wilhoite, Chicago, IL, 60614 for plaintiffs-appellants.

Arthur B. Smith, Jr., Michael T. Roumell (argued), Walter W. Miller, Murphy, Smith & Polk, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, MANION, Circuit Judge, and FOREMAN, Senior District Judge.*

MANION, Circuit Judge.

Allsteel Inc. provided employees who retired by a certain date with early retirement benefits. Some employees who wanted the benefits did not retire in time. They sued Allsteel, claiming that they intended to retire within the required time, but did not do so because Allsteel misinformed them about the actual cut off date. They also claimed that Allsteel violated ERISA by this failure to properly notify them and by improperly reducing the early retirement benefits it provided. The district court, 814 F.Supp. 657, granted summary judgment for Allsteel and the employees appeal. We affirm in part, reverse in part, and remand.

---

* Hon. James L. Foreman, Senior District Judge for the Southern District of Illinois, is sitting by designation.

## I. Facts

Allsteel, a company which manufactures office furniture, adopted a pension plan for its employees on August 1, 1974. The pension plan provided retirement benefits for the employees. Under the plan's terms, retirement benefits were to be paid beginning on the employees' "retirement date." For administrative purposes, the plan defined "retirement date" as "the first day of the month coincident with or next following the date on which [the employee] retires." Therefore, if an employee retired on the first day of a month, the plan regarded that day as his official retirement date. But if the employee retired on any other day during a month, his official retirement date was the first day of the next month. Thus, the day an employee retired was not necessarily his retirement date.

Periodically, Allsteel and the employees negotiated changes in the 1974 pension plan through the collective bargaining process. Once these changes were made, they were incorporated into the pension plan by the express terms of the applicable collective bargaining agreement. In the collective bargaining agreements negotiated in 1988 and 1991, Allsteel agreed to supply the employees with early retirement benefits as an incentive for early retirement. The benefits provided the plan participant with an additional source of income until age 65, when Social Security retirement benefits commenced. The 1988 agreement provided:

> (a) Any member who retires on or after January 1, 1985 but before April 1, 1991 shall be entitled to a supplemental benefit for the month in which he retires and each month thereafter while he is living during the payment period in the amount of $600 until such member attains age sixty-five. . . .

> (c) Any member who retires on or after April 1, 1988 shall be entitled to a supplemental benefit commencing on July 1, 1988 or at later retirement and for each month thereafter while he is living during the payment period in the amount of $900 until such member attains age sixty-five.

The 1991 agreement provided:

> 1. Employees who retired on or after 1/1/85 and prior to 3/31/91 shall be entitled to receive a $600 per month pension supplement until they reach age sixty-five.
> 2. Employees who retired on or after 4/3/88 and prior to 3/31/91 shall be entitled to continue to receive a $900 pension supplement until they reach age sixty-five.

Together, these provisions opened a window of opportunity between January 1, 1985 and March 31, 1991 for employees who wished to retire early with a generous benefit package. Many employees did retire early. The plaintiffs did not and they blame the company for quashing their opportunity. They claim that they approached Allsteel in February and March 1991 expressing an interest in early retirement. But Allsteel told them that if they retired after March 1, 1991, they were not entitled to benefits because the pension plan would then deem their retirement date to be April 1, the day after the supplemental benefit expired. The company does not dispute that this has always been its position—that an employee is not deemed to have retired until his official retirement date. In its appellate brief, however, the company disputes that the employees approached its representatives seeking to retire in March 1991 only to be told that the opportunity had expired.

The employees filed a complaint hoping to compel the company to reinstate the opportunity for early retirement. They also sought damages, claiming the company prematurely terminated the early retirement option, thus denying them the benefit. In their brief, the employees summarized the crux of their argument:

> In February and March of 1991, certain plaintiffs informed Allsteel that they intended to retire prior to March 31, 1991 in order to receive the supplemental pension benefits. App. at 5. Allsteel informed these plaintiffs that although they could retire prior to March 31, 1991, Allsteel would deem their retirement date to be April 1, 1991, and that any employee who retired after March 1, 1991 would not be eligible for the pension supplements. App. at pp. 5–6. The remaining plaintiffs, all of whom wished to retire prior to March 31, 1991 were informed prior to that date of Allsteel's interpretation of the eligibility

requirement for the supplemental early retirement benefits. Complaint, R–1 at para. 17. As a result of this information, and unsure of their eligibility for the pension supplements, plaintiffs did not retire prior to March 31, 1991. App. at 6.

The record cites in this paragraph are deceptive. Cites to the appendix simply refer to the district court's fact section in the summary judgment order. The cite to the official record simply refers to the complaint. The employees do not cite factual support for their assertions that they approached the company about early retirement in February and March only to be told that it was too late.

After receiving the complaint and before filing an answer, Allsteel filed a combined motion to dismiss/motion for summary judgment. The district court granted Allsteel's motion for summary judgment. The court agreed with Allsteel's position that the definition of retirement date in the 1974 pension plan controlled the meaning of retire as used in the 1988 and 1991 collective bargaining agreements. Based on its interpretation of these terms, the court ruled that even if the employees had retired in March 1988, their official retirement date would have been April 1, and they would not have been entitled to early retirement benefits. The court also disposed of various other theories upon which the employees sought recovery. For the purposes of this appeal, only two of those theories are important. The court determined that the 1991 agreement did not violate ERISA Section 204(g), 29 U.S.C. § 1054(g), by reducing an accrued benefit, and that Allsteel did violate ERISA Section 104(b)(1), 29 U.S.C. § 1024, by failing to provide an updated summary plan description.

The employees appeal, contending: 1) that the district court erred by confining the meaning of the word retire in the 1988 and 1991 collective bargaining agreements to the plan's definition of retirement date; and that, contrary to the district court's legal determinations, 2) the 1991 agreement violated ERISA section 204(g) by reducing an accrued benefit; and 3) Allsteel violated ERISA section 104(b)(1) by failing to provide an updated summary plan description. Allsteel disputes all of these points, and raises an alternative basis for granting summary judgment. Allsteel points out that the employees have failed to introduce affidavits or other evidence showing that they approached the company in February or March expressing an intent to retire in March, only to be informed that the plan did not allow them to do so. Allsteel argues, therefore, that we should affirm because the employees have failed to demonstrate a genuine factual issue regarding their attempts to retire.

## II. Analysis

### A. Retire and Retirement Date

The employees' theory of recovery is premised on their assertion that they were entitled to receive early retirement benefits if they left their jobs in March 1988, but did not do so because of Allsteel's misinformation. It follows that if they really were not entitled to benefits if they retired in March 1988, their theory crumbles. The first inquiry, therefore, is whether the employees were entitled to early retirement benefits if they left their jobs in March 1988.

The district court rested its summary judgment upon its interpretation of the words retire and retirement date, concluding that even if the employees had retired in March, they could not receive early retirement benefits because their official retirement date would not have been until April 1. The employees contend that this reasoning misinterprets the plain meaning of the word retire. They contend that the unambiguous language of the 1988 and 1991 collective bargaining agreements granted early retirement benefits if they retired in March, even if the official plan calculated their retirement date as April 1.

Allsteel argued below that the district court should give some deference to the plan administrator's interpretation of the pension plan, in accordance with *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The district court did not do so, and instead conducted a *de novo* review of the employees' claim for benefits. Allsteel does not resurrect this argument on appeal. Accordingly, the standard of review is not disputed; we review de novo the district court's interpreta-

tion of the pension plan. *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991). Like the district court, we review the terms of the pension plan—in this case the word retire—by referring to federal common law rules of contract interpretation. *Hammond v. Fidelity and Guar. Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992). Federal common law rules of contract interpretation parallel equivalent state rules. We interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience, and we construe ambiguities in ERISA plans against the drafter. *Id.; see also Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F.2d 302, 307–08 (7th Cir.1992); *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1051 (7th Cir. 1991).

■ Under common law rules of contract interpretation, we give the word retire its ordinary meaning in the context of the plan. In common parlance, retire means to leave employment after a period of service. *See* Webster's Ninth New Collegiate Dictionary 1007 (1986) (retire is "to withdraw from one's position or occupation: to conclude one's working or professional career"). In this case, the employees claim they sought to leave employment in March. If they did so, they would have retired in March. The fact that the plan defines retirement date as occurring in the next month does not alter this common meaning. Nor does the definition of retirement date render the word retire—a word with an obvious meaning—to be ambiguous. Indeed, just because the plan administers retirement benefits beginning on the first day of the next month would not change the fact that the employees retired in March.

If Allsteel is correct, that the definition of retirement date controls the meaning of retire, the plan becomes conflicting and unworkable. Allsteel essentially argues that the plan's definition of retirement date should be substituted every time the plan uses the word retire. But the definition of retirement date uses the word retire to explain its meaning; the plan defined "retirement date" as "the first day of the month coincident with or next following the date on which [the employee] retires." *See supra* at 2. If retirement date were used in place of

retire in that instance, then the definition would lose any meaning. Retirement date would be defined as the first day of the month after the retirement date—an impossible calculation.

To impose the definition of retirement date on the word retire contorts the plan into an unworkable ambiguity. Using this circular definition would require extrinsic evidence to determine what the contract meant. We do not favor an interpretation which so distorts the plan. *See* Restatement (Second) of Contracts § 203(a) (1981) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"). A better approach is to accept the common meaning of the word retire; after all, that is what the employees and Allsteel likely bargained for. Under the ordinary meaning of the word retire, if the employees had retired in March, they would have been entitled to retirement benefits. The district court should not have confined the meaning of the word retire to the plan's definition of retirement date in rendering summary judgment.

### B. Alternative Basis

■ Allsteel raises an alternative basis to affirm the district court's grant of summary judgment. We may affirm the district court's grant of summary judgment on an alternative basis, as long as that basis finds support in the record. *Box v. A & P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir.1985). Allsteel notes that the employees failed to introduce evidence that they actually intended to retire in March but were put off by Allsteel's misinformation. We agree with Allsteel that to be successful, the employees at some point must substantiate this allegation with factual support. They must present the court with a factual record detailing their attempts to retire and the company's actions in misinforming them. The only question is whether the employees were required to build this factual record below, in response to Allsteel's motion to dismiss/motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (party opposing motion for summary judgment

must point the court to record evidence creating genuine issue of material fact).

A party's duty in responding to a motion for summary judgment is best described in the summary judgment rule—Rule 56 of the Federal Rules of Civil Procedure.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Whether the employees were required to present the court with specific facts concerning the circumstances of their attempted retirement depends on the grounds Allsteel relied upon in seeking summary judgment. If Allsteel asserted as a basis for its motion that the employees did not really intend to retire in March, then the employees would have been required to present contrary facts to create a factual question. *See Travelers Ins. Co. v. Transport Ins. Co.,* 787 F.2d 1133, 1137 (7th Cir.1986) (when a court decides to invoke an alternative basis for granting summary judgment "it is important that the ground have been presented to the trial court so that the non-moving party might have the opportunity to contest the issue and make a record on it."). On the other hand, if Allsteel never asserted this ground before the trial court, we are unable to grant summary judgment on the alternative basis. *See Box,* 772 F.2d at 1376 ("we may affirm a summary judgment on any ground that finds support in the record ... but the ground must have been adequately presented in the trial court so that the non-moving party had an opportunity to submit affidavits or other evidence and contest the issue.").

Although Allsteel argues for affirmance of the district court based on the employees' failure to factually support this important allegation, Allsteel does not show that it presented the same argument to the district court. Upon independent review, we were unable to find this argument in Allsteel's motion to dismiss/motion for summary judg-

ment. Because Allsteel did not make this argument, the employees had no duty to respond to it by building a factual record. While Allsteel has identified an appropriate issue for any future summary judgment motion it might file, at this point we are not able to affirm summary judgment on this alternative ground.

### C. Other Arguments

#### 1. Section 204(g)(1).

■ The employees claim in their complaint that the 1991 collective bargaining agreement limited the early retirement benefits granted in the 1988 agreement by restricting the $900 early retirement supplement to those employees who retired "prior to 3/31/91". *See supra* at 3. Because the 1988 agreement conferred the same benefit but did not include the "prior to 3/31/91" restrictive language, the employees claim that the 1991 agreement was an impermissible amendment to the pension plan reducing an accrued benefit. This theory raises several legal questions: Did the 1991 agreement actually reduce what was granted by the 1988 agreement? Do provisions for early retirement benefits negotiated through the collective bargaining process amount to amendments to a pension plan? Are early retirement benefits accrued benefits? In their briefs, the parties argue for their respective sides on these questions, and ask us to answer all of them. But we need not do so. By answering the third question, we resolve the issue which is before us.

The plain language of ERISA leads to the inescapable conclusion that early retirement benefits are not accrued benefits. ERISA Section 204(g), 29 U.S.C. § 1054(g), prohibits amendments to a pension plan which have the effect of reducing "accrued benefits." The definition section of ERISA defines an accrued benefit as one "commencing at normal retirement age...." ERISA Section 3(23), 29 U.S.C. § 1002(23). The statute defines normal retirement age as "the time a plan participant attains normal retirement age under the plan" or the later of "the time a plan participant attains age sixty-five, or ... the tenth anniversary of the time a plan participant commenced participation in the plan." *Id.* at § 1002(24). Taken together, these provisions indicate that early retire-

ment benefits are not accrued benefits under ERISA. *Accord, Bencivenga v. Western Pennsylvania Teamsters and Employees Pension Fund,* 763 F.2d 574, 577–78 (3d Cir.1985) ("early retirement benefits are not considered 'accrued benefits' under ERISA."); *Sutton v. Weirton Steel Div. of National Steel Corp.,* 724 F.2d 406, 410 (4th Cir.1983) ("accrued benefits secured by ERISA do not encompass unfunded, contingent early retirement benefits . . . ."). Therefore, even if the 1991 agreement had the effect of reducing the early retirement benefits given in the 1988 agreement, there was no impermissible reduction of an accrued benefit.

### 2. Section 104(b)(1).

■ Finally, the employees argue that Allsteel failed in its statutory duty under ERISA Section 102, 29 U.S.C. § 1022, to provide an adequate summary plan description. ERISA requires that plan summaries be issued every five years, ERISA section 104(b)(1), 29 U.S.C. § 1024(b)(1), which reasonably apprise participants of their rights under the plan "in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a)(1). The employees specifically complain that Allsteel failed to provide them with notice of Allsteel's unique interpretation of the word retire. This point appears moot, in light of our decision that the word retire is not confined to the plan's definition of retirement date. In any event, even if the employees are correct—that Allsteel technically violated this reporting requirement—they can only recover if evidence suggests this was done in bad faith. *See Kreutzer,* 951 F.2d at 743 (employer's failure to comply with ERISA's reporting procedures excused because no showing of bad faith or active concealment). There is no allegation or evidence of bad faith in this case. Therefore, the district court properly granted summary judgment on this issue.

### III. Conclusion

The district court incorrectly confined the meaning of the word retire in the 1988 collective bargaining agreement to the 1974 pension plan's definition of retirement date. Therefore, the district court erred in granting summary judgment for Allsteel based on this flawed interpretation. The district court properly granted summary judgment on the

employees' other theories of recovery. Specifically, the 1991 agreement did not impermissibly reduce an accrued benefit because early retirement benefits are not accrued benefits. Also, Allsteel did not violate ERISA's plan summary requirements by failing to provide notice of its unique interpretation of the word retire. We remand this case to the district court to conduct further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.