ROYAL MACCABEES LIFE
INSURANCE COMPANY,
Plaintiff–Appellee,

v.

Mona PETERSON, as Surviving Spouse
and Designated Primary Beneficiary of
Monte Peterson, Deceased, Defendant–
Appellant.

No. 97–2317.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1998.

Decided March 18, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied April 14, 1998.

Patrick A. Murphy, Michael J. Smith (argued), Chicago, IL, for Plaintiff–Appellee.

Gary D. McCallister, Chicago, IL, Eric I. Unrein (argued), David, Unrein, Hummer, McCallister & Buck, Topeka, KS, for Defendant–Appellant.

Before MANION, KANNE, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Royal Maccabees Life Insurance Company (Royal) sued Monte Peterson in federal court; the company sought a declaration concerning its duty to provide Peterson with a $750,000.00 life insurance policy. Peterson counterclaimed, alleging negligence on Royal's part in unreasonably delaying its decision either to accept or reject his insurance application.[1] The district court issued a declaratory judgment in Royal's favor; the court also granted Royal's motion for summary judgment with respect to Peterson's claims. We reverse.

---

1. Peterson also claimed Royal breached its contract by unilaterally rescinding its insurance policy covering him. The district court dismissed that claim, but only the dismissal of the negligence claim is on appeal.

## I.

Monte Peterson was slated to become the president and CEO of High Sierra Sports Company; his compensation package was to include a $750,000.00 life insurance policy on his behalf (actually, on behalf of his wife as the designated beneficiary). Peterson planned to begin his new job on May 8, 1995, so it was presumed that his life insurance policy—to be issued by High Sierra's insurer, Royal—would be in place by that date. Peterson and a representative of High Sierra prepared and sent Peterson's application for life insurance which Royal received on April 4. Royal began to process the application, but asked Peterson to submit additional information, which he did. By all accounts (at least for purposes of Royal's motion for summary judgment in the district court), Royal believed Peterson to be insurable at least as early as May 2, 1995, six days before he was to start his new job. But Royal did not finally issue the policy until May 15, 1995.

In the meantime, on May 7, the evening before his new job was to begin, Peterson was rushed to the hospital; the doctors detected a collapsed lung which turned out to be cancer. Apparently Royal did not learn that Peterson had been in the hospital until much later, because it not only issued the policy in the full amount on May 15, but also collected a $1,500 premium on the same day and $2,500 a few weeks later. But in August Royal learned of Peterson's illness and rescinded the policy.

As noted above, Royal began this litigation by seeking a declaration of its duty to provide Peterson with life insurance; Peterson counterclaimed alleging Royal's negligence in unreasonably delaying the processing of his application. The court ruled that even though Royal delayed for at least six days (from May 2 to May 8) after finding Peterson insurable, "any unreasonable delay was not prejudicial because there is no evidence that Peterson could have obtained life insurance elsewhere during the six-day period when he was insurable [by Royal]."

Unfortunately, while Royal's motion for summary judgment was pending in the district court, Peterson died. The district court substituted his wife as his surviving spouse and designated beneficiary had Royal paid on the policy.

## II.

As they did in the district court, the parties concede that Royal did not issue the policy for the six days between May 2 and May 8 even though it considered Peterson to be insurable. During that time period, which Peterson claims amounted to a negligent delay, Royal neither issued the $750,000.00 policy nor notified Peterson that his application for insurance had been rejected. So the only question facing the district court (and now facing us) is whether Peterson is entitled to a jury trial on his negligence claim.

The parties agree that Illinois law governs this diversity case. Under Illinois law, an insurance company like Royal has an affirmative duty to respond promptly to insurance applications. When a potential client applies for insurance, the company is legally obliged "to act with reasonable promptness on the application, either by providing the desirable coverage or by notifying the applicant of the rejection of the risk so that he may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere." *Talbot v. Country Life Ins. Co.*, 8 Ill.App.3d 1062, 291 N.E.2d 830, 832 (1973). Of course there is no general legal duty to *issue* policies (a point Royal hammers home); the duty is to act on an insurance application either by rejecting it or accepting it. What the insurance company cannot do is to in effect sit on the application by delaying or withholding its decision to approve or disapprove. In that circumstance, the insurer may have lulled the applicant into incurring an increased risk—he may not believe there is any reason to seek coverage elsewhere, but at the same time he has no coverage from the would-be insurer. *See id.* ("where an application was made for a life policy with a beneficiary being designated to receive the proceeds, a cause of action lodges in such beneficiary, upon the applicant's death, for unreasonable delay on the part of the insurer, in accepting or rejecting such application") (quoting Appleman, 12 In-

surance Law and Practice, at § 7232, now stated in vol. 12A, § 7222 (1981)).

In this case, we are not asked to determine if Royal unreasonably delayed for six days before accepting or rejecting Peterson's application. Rather, Royal argues that it could not be liable to Peterson because its delay, even if unreasonable, caused him no prejudice. According to Royal (and the district court), Peterson could establish prejudice only by pointing to evidence that but for Royal's six-day delay, he could have obtained insurance elsewhere. Peterson had no applications pending at other insurance companies, and had no evidence that other insurers found him generally insurable. And it is highly unlikely that if Royal had rejected the application on May 2 or 3, Peterson could have applied for and obtained coverage elsewhere.

Royal might be liable if its delay cost Peterson the chance to obtain insurance elsewhere, but Peterson instead argues that under Illinois law he could make his case by proving that Royal itself found him insurable and would (and should) have issued a policy during the period in which it unreasonably delayed. In other words, if Royal found Peterson insurable but delayed saying so, it can't escape liability by claiming that during the period of delay no other company declared him insurable. *See Geraghty v. Continental Western Life Ins. Co.*, 281 Ill.App.3d 669, 217 Ill.Dec. 421, 427, 667 N.E.2d 510, 516 (1996) (stating plaintiff must prove "insurance *applied* for could have been secured or that the insurance could have been secured elsewhere" and affirming summary judgment for defendant Continental because plaintiff failed "to plead or produce any evi-

dence that [deceased] was insurable *by Continental* or any other insurer") (emphasis added).[2]

While both parties (along with the district court) cite the *Geraghty* case, it plainly supports Peterson's argument that the district court did not apply the second part of the test. While the court correctly asked whether Peterson could have obtained insurance elsewhere, it also should have asked whether Peterson could have obtained the insurance from Royal itself. Preliminarily, at least, the answer to this second question appears to be "yes"—even Royal concedes for purposes of summary judgment that it found Peterson insurable as early as May 2. Accordingly, the court should not have granted Royal's motion for summary judgment. It should have allowed Peterson to argue to a jury that the period of six days (from May 2 to May 8)—in which Royal found him insurable but did not issue a policy—constituted an unreasonable delay under Illinois law. Royal, of course, could counter this with additional facts.[3]

As we noted above, Royal's argument to both this court and the district court is that it has no legal duty to issue policies, even to individuals it finds insurable. The argument misses the point. While Royal has no legal duty to issue policies, under Illinois law it does have a legal duty to rule on applications promptly, either by issuing the policy or rejecting it so the applicant can obtain insurance elsewhere. If it delays and does not promptly rule on the application, it may be liable for any damages caused by the delay. In this case, it concedes that it delayed for six days, and a jury will have to determine

---

**2.** Though not controlling in this diversity case, we note that other circuit courts applying state laws recognizing negligent delay claims have phrased the plaintiff's burden in similar terms. *See Huff v. Standard Life Ins. Co.*, 897 F.2d 1072, 1075 (11th Cir.1990) (applying Florida law and stating that plaintiff could have met his burden "by showing that [decedent] was insurable under the [defendant] SLIC's rules, limits and standards"); *Wilson v. Mass. Indemnity and Life Ins. Co.*, 920 F.2d 1548, 1553 (10th Cir.1990) (applying Oklahoma law and stating: "Mrs. Wilson must prove either that [defendant] Milico would have accepted Mr. Wilson as a standard risk before his death if it had acted more diligently,

or that he was generally insurable and could have obtained insurance elsewhere had he not thought that Milico would accept his application.").

**3.** We note by way of background that there may have been good reasons for the delay in this case. For example, the record tells us that on May 4 Royal submitted Peterson's application to its reinsurer, which did not respond on the application for reinsurance until May 11. We express no opinion whether this circumstance justifies any delay on Royal's part, and leave the entire issue to a jury.

whether or not that length of time is appropriate. REVERSED and REMANDED.