Pamela VAN DEN ENG
et al., Plaintiffs,

v.

CIGNA LIFE INSURANCE CO.,
and Connecticut General Life
Insurance Co., Defendants.

No. 01–C–664.

United States District Court,
E.D. Wisconsin.

April 9, 2004.

Bryan K. Nowicki, George Burnett, Herbert C. Liebmann, III, Robert M. Charles, Liebmann Conway Olejniczak & Jerry, Green Bay, WI, for Plaintiffs.

Amy J. Wilkinson, Timothy A. Bascom, Bascom Budish & Ceman SC, Wauwatosa, WI, for Defendants.

## DECISION AND ORDER

GRIESBACH, District Judge.

This case, which was removed to this court from state court, arises under the Employee Retirement Income Security Act of 1974, (ERISA), 29 U.S.C. § 1001, et seq. The plaintiffs are beneficiaries of Patrick J. Van Den Eng, now deceased, under a group universal life insurance plan (GUL) established by Fort James Corporation pursuant to a group insurance contract issued by Cigna Life Insurance Co.[1] to Fort James Corporation. The crux of the dispute is whether plaintiffs are entitled to the additional insurance amount that Van Den Eng requested prior to his death. The case is presently before me on plaintiffs' motion for summary judgment.

The operative facts are brief and, though not generally contested, they are not fully developed. Patrick Van Den Eng was an employee of the Fort James Corporation and received basic term life insurance as a part of his employee benefits package there. Fort James employees could also elect group universal life insurance under the policy issued by Cigna in an amount "equal to 1, 2, 3, or 4 times their Annual Compensation." An employee who elected universal life coverage within thirty days of becoming eligible was automatically covered. An employee who elected insurance after that time, however, or who later chose to increase the amount of his insurance, was required to satisfy the Insurability Requirement by showing evidence of good health. (Wilkinson Aff., Ex. A, pp. 7–8, 17.)

In March 2000, Van Den Eng submitted an "Evidence of Insurability Form" to Cigna requesting that the GUL coverage amounts for both himself and his wife be increased. At the time he submitted the request, each was insured under the GUL policy for $40,000. Van Den Eng requested that his own coverage be increased to $220,000, which he apparently thought was four times his annual compensation.[2] His

---

1. Cigna is the holding company; the insurance was issued by Connecticut General, a subsidiary. Throughout this opinion, Cigna refers generically to both defendants as if they were one entity.

2. Van Den Eng was only eligible for coverage of up to four times his "Annual Compensation." On the form requesting that his insurance be increased, Van Den Eng listed his annual compensation as $55,000 and request-

wife's coverage amount was to be increased to $50,000. (Wilkinson Aff., Ex. B.)

On May 31, Cigna returned the form to Van Den Eng, explaining that it could not process his application because of his failure to answer a question regarding whether any surgical operation had been scheduled or completed for him or his spouse. The letter, which listed the amount of insurance requested by Van Den Eng as $156,000, instructed him "to complete the highlighted areas on the enclosed copy of your application and return it in the enclosed envelope for prompt processing." It further stated that "[a]ny changes made to the enrollment form must be initialed, re-dated and re-signed by the owner (and insured, if applicable)." (Wilkinson Aff., Ex. C.)

In response, Van Den Eng checked the boxes indicating that no surgical operations had been scheduled or completed for himself, but answered the question "yes" as to his spouse, and returned the application to Cigna. Apparently under the impression that providing the information that was inadvertently omitted did not constitute a "change" that had to be initialed and required the form to be re-dated and re-signed, Van Den Eng simply returned the copy of the form with the highlighted area now completed. He did not initial the highlighted area, nor did he or his wife re-date or re-sign the application. Cigna received the form by June 15, 2000. (Wilkinson Aff., Ex. D.)

When Cigna received the now completed form, it inadvertently placed it in Mr. Van Den Eng's file without processing it further. A supervisor at Cigna has explained that because the original application had been "logged in" to its medical underwriting department, it was assumed no further processing action was required because the medical underwriting department was reviewing the application. Apparently, it was not. (Townsend Aff., ¶ 5.)

About a month later, on July 14, 2000, a direct mailing company working with Cigna, and using Cigna's letterhead, sent out letters to all Fort James employees to inform them of their current coverage. (Spinosa Aff., Ex. A.) Due to a spreadsheet problem, however, all of the letters incorrectly stated each participants' amount of coverage. In Van Den Eng's case, for example, the letter he received stated that his current GUL coverage was $168,000, even though (1) he had applied for $220,000, and (2) the maximum amount he was eligible for was $156,000. The letter also informed Van Den Eng that his spouse's GUL coverage was $50,000, the amount that had been requested, and that his children, for whom he had not requested coverage, were insured under Cigna's GUL Policy for $10,000.

In any event, the mistake was quickly discovered, and new letters were sent out to all participants indicating their actual coverage. Cigna claims that the direct mailing company sent out a correction letter to Van Den Eng on July 19 advising Van Den Eng that the July 14 letter "contained inaccurate coverage information, which should be disregarded," and indicating that his and his spouse's GUL coverage was still $40,000, as it had been all along. (Spinosa Aff., Ex. B.) The plaintiffs deny ever getting this letter, although they received all other correspondence from Cigna.

---

ed coverage for four times that amount, or $220,000. The $55,000 listed by Van Den Eng, however, included "overtime, bonus, additional compensation, or pay for more than 40 hours in a week," which was not included in the definition of "Annual Compensation." (Wilkinson Aff., Ex. A, p. 5.) Because his actual "Annual Compensation" was $39,000, the maximum amount of insurance Van Den Eng was eligible for was $156,000.

The next communication between the parties came in October 2000, when plaintiffs' counsel informed Cigna that Mr. Van Den Eng had died unexpectedly as a result of an accident. In reviewing the plaintiffs' claim, Cigna determined that the application for additional insurance had never been accepted and that the Van Den Engs had never paid any premiums for increased life insurance coverage. (Townsend Aff., ¶ 6.) Thus, Cigna paid out only $40,000 under the GUL policy to Van Den Eng's beneficiaries.

The plaintiffs then brought suit in state court seeking recovery of $128,000 (the difference between the $40,000 paid and the $168,000 amount referred to in the July 14 letter). In their amended complaint, they have asserted three separate causes of action. The first, entitled "ERISA–Breach Of Contract," seeks recovery of benefits allegedly due under the policy pursuant to 29 U.S.C. § 1132(a)(1)(B). The second cause is entitled "ERISA–Estoppel" and seeks equitable relief based on a July 14, 2000 letter Cigna sent Van Den Eng advising him that his Group Universal Life insurance under its policy was $168,000. The third cause of action asserted by plaintiffs is for bad faith.

**1. Applicable Law**

■ Without arguing the point, plaintiffs raise the question whether the plan at issue is actually an ERISA plan at all. They suggest that because participation in the Fort James universal life program was voluntary, the employee alone is responsible for the premiums, and there is no evidence Fort James received any compensation for participating in the program, the plan may fall within the "safe harbor" provision established by the Department of Labor for determining when a plan does not fall under ERISA. *See Postma v. Paul Revere Life Insurance Co.*, 223 F.3d 533, 537 (7th Cir.2000). Plaintiffs do not argue the point because, in their view, the result is the same whether or not ERISA applies. Subject matter jurisdiction would not be lost since, even if ERISA does not apply, the court would still have diversity jurisdiction based on the citizenship of the parties and the amount in controversy. *See* 28 U.S.C. § 1332(c). And while plaintiffs recognize that federal common law governs if ERISA applies, whereas Wisconsin law governs if jurisdiction is based on diversity, they argue that whichever law is applied, the result is the same.

■ Whether or not ERISA applies, however, does make a difference. If ERISA applies, then plaintiffs' claim for bad faith is clearly preempted and must be dismissed. *Maciosek v. Blue Cross & Blue Shield United of Wisconsin*, 930 F.2d 536, 540 (7th Cir.1991). In addition, plaintiffs would have a right to a jury trial if Wisconsin law applies. No such right exists in a civil action to recover benefits under ERISA. *Wardle v. Central States, Southeast and Southwest Areas, Pension Fund*, 627 F.2d 820, 830 (7th Cir.1980). And even if the result would be the same on plaintiffs' remaining claims, the route by which that result would be reached would be different, depending on whether federal common law or Wisconsin law was applied. I therefore conclude that I must first determine whether ERISA is applicable.

The Labor Department's "safe harbor" regulation reads as follows:

> (j) Certain group or group-type insurance programs. For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j).

Although the record is not fully developed on the issue, I conclude from my review of the policy that the GUL plan at issue here falls outside of the safe harbor created by the Department of Labor regulation. Under the plan, the functions of the employer exceed simply allowing the insurer to publicize the program to employees and collecting premiums through payroll deductions. The Certificate of Insurance explicitly states that the plan is established and maintained by Fort James Corporation. Fort James is also identified as the plan administrator, and the agent for service of legal process is the Director of Employee Benefits for Fort James. (Wilkinson Aff., Ex. A, pp. 59–60.) The certificate provides that employees are entitled to examine all plan documents without charge at the Plan Administrator's Office at Fort James and obtain copies of all plan documents from the Plan Administrator for a reasonable charge. Based upon these provisions, I conclude that the plan

falls within the parameters of ERISA and federal law applies.

## 2. Denial Of Benefits Claim

Plaintiffs' first claim, as noted above, is entitled "ERISA—Breach of Contract." Breach of contract, however, is a state cause of action which is preempted by ERISA. *Pilot Life v. Dedeaux*, 481 U.S. 41, 57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Smith v. Blue Cross & Blue Shield United of Wisconsin*, 959 F.2d 655, 657 (7th Cir.1992). In place of state causes of actions, Congress has authorized plan participants or their beneficiaries to bring a civil action to recover benefits due them under the plan. Plaintiffs' first cause of action is therefore more properly viewed as an action for benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiffs claim that, as Van Den Eng's beneficiaries, they are entitled under the terms of the plan to the additional insurance he requested prior to his death. They claim, as they must on a motion seeking summary judgment, that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In order to assess plaintiffs' first claim, it is necessary to look to the pertinent language of the plan. Because this action arises under ERISA, federal common law principles of contract interpretation govern. *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 66 F.3d 862, 864–65 (7th Cir.1995). These principles require that the terms of the plan or contract be interpreted "in an ordinary and popular sense as would a [person] of average intelligence and experience." *Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F.2d 302, 308 (7th Cir.1992). "Extrinsic evidence should not be used where the contract is

unambiguous." *GCIU Employer Retirement Fund,* 66 F.3d at 865.

■ Here, the pertinent language provides that an employee may elect an increased coverage amount "on any date." (Wilkinson Aff., Ex. A, p. 11.) The plan further provides:

> the Insured will become covered for the elected higher Coverage Amount only if he satisfies the Insurability Requirement for that amount. The effective date of the increase will be the day [Cigna] accepts the Insured for the higher coverage.

(*Id.* at 12.) There is no dispute that Van Den Eng requested higher coverage. And since the plan provides that "[a]n insured will be considered to have satisfied the Insurability Requirement for a Coverage Amount on the day [Cigna] accepts that person as insurable for that amount" *(id.* at 7), the question before me is whether Cigna accepted him for the higher coverage prior to his death.

Plaintiffs claim that Cigna did accept Van Den Eng for the higher coverage he requested in its letter of July 14, 2000, wherein it advised him that "[y]our current GUL Insurance amount is $168,000." Once the letter was received by Van Den Eng, they argue, a binding contract was formed and any attempt to revoke it was legally ineffective. (Pl.'s Br. In Supp. at 7.) Cigna, on the other hand, claims that the July 14 letter could not have created a binding contract because the form Van Den Eng returned was still defective since Van Den Eng's failed to initial the area where he added the omitted information, and to re-date and re-sign the form.

But whether Van Den Eng properly completed the form is irrelevant here. The issue is whether Cigna accepted him for the increased coverage amount, not whether Van Den Eng submitted a properly completed application requesting it. In the absence of fraud or misrepresentation, a defect in the application would not be a defense to a claim for increased insurance benefits that Cigna agreed to provide. Cigna is correct that it was under no obligation to provide coverage based on a defective and out-of-date application for insurance. But that does not negate the fact that Van Den Eng requested an increase in his insurance coverage and, under the terms of the plan, such increase would become effective on the day Cigna accepted him for that amount.

Cigna's second argument is that the July 14 letter it sent was not a valid acceptance because the letter indicated coverage of $168,000, a number that had not appeared in any other documentation or correspondence between the parties. Van Den Eng's application requested $220,000 of coverage, and the May 31 letter from Cigna indicated that he had requested $156,000 of coverage. Thus, given that the amount in the July 14 letter materially differed from Van Den Eng's request, the letter cannot be considered an acceptance of the requested amount. Cigna also points to the fact that the July 14 letter was sent in error, and that the error was corrected less than a week later with its July 19 letter.

Plaintiffs counter this argument with two arguments of their own. They first claim that Van Den Eng never received Cigna's July 19 letter telling him that the information set forth in the earlier letter was inaccurate and should be disregarded. Plaintiffs recognize, however, that this claim raises an issue of fact that cannot be decided on summary judgment. Plaintiffs' second argument is that, even if Van Den Eng had received the letter, it could not have resulted in a termination of his insurance. In support of this argument, plaintiffs rely on the basic principle of contract law that, once a contract is formed, a party may not unilaterally repudiate it without

legal grounds to do so. Here, plaintiffs argue, there were no legal grounds to do so. Under general contract law principles, they point out, a mistake by only one party does not, in and of itself, render a contract voidable. *See Sorce v. Rinehart,* 69 Wis.2d 631, 638, 230 N.W.2d 645 (1975). And under Wisconsin statutory law, they note, the right of an insurer to cancel or alter an insurance policy prior to its expiration is limited to specified conditions, none of which occurred in this case. Wis. Stat. § 631.36; *Hanson v. Prudential Property & Casualty Ins. Co.,* 224 Wis.2d 356, 368, 591 N.W.2d 619 (Ct.App.1999). Moreover, because this law "regulates insurance," plaintiffs argue it falls outside of the general ERISA preemption clause. See 29 U.S.C. § 1144(b)(2)(a).

But the question before me is not whether Cigna lawfully terminated Van Den Eng's insurance coverage after it agreed to provide it. The question here is whether Cigna ever agreed to provide it in the first place—whether Cigna ever accepted Van Den Eng for the higher coverage he requested. I am unable to conclude on the record before me that it did. The July 14 letter on which plaintiffs rely was clearly sent in error. It was not intended as an acceptance of Van Den Eng's request for increased insurance, and by its terms, did not even address it. Van Den Eng had requested that his coverage be increased to $220,000, even though he was only eligible for $156,000. The July 14 letter did not mention either amount. Even under basic contract principles, the letter does not constitute acceptance of Van Den Eng's offer to increase his insurance. Under basic contract law, a response to an offer which differs in material terms constitutes a counter-offer rather than an acceptance. *See Erickson v. Mid-Century Ins. Co.,* 63 Wis.2d 746, 751, 218 N.W.2d 497, 500 (1974)("delivery of such policy and declaration sheet which did not accord with the application for insurance was no more than '... a counter-offer which must be accepted by the applicant in order to constitute a binding contract.'") (citation omitted). *See also* 43 Am.Jur. Insurance § 224: "To be effective as a completion of a contract, an insurer's acceptance of an application or proposal for insurance must be substantially upon the terms offered, and there must not be a variance between the application or proposal for insurance and its acceptance." Accordingly, I am unable to conclude on the record before me that, under the terms of the plan, the increase coverage amount requested by Van Den Eng was in effect at the time of his death.

### 3. Equitable Relief

■ Plaintiffs' second cause of action is entitled "ERISA—Estoppel." In support of this claim, plaintiffs allege that they reasonably relied on Cigna's representation in its July 14 letter that Van Den Eng's GUL Coverage Amount was $168,000 and that, as a result of that reliance, Van Den Eng did not take steps to obtain additional life insurance. Based upon these allegations, plaintiffs claim Cigna is liable to them in the amount of $128,000, with interest. In their brief in support of their motion for summary judgment, plaintiffs appear to have expanded their claim by arguing that Cigna is also estopped from denying the increased coverage because of its unreasonable delay in processing Van Den Eng's application of additional coverage. They claim that because Cigna failed to act on Van Den Eng's application within a reasonable time, it is estopped for this reason as well from now denying the increased coverage.

■ It has long been the rule in this circuit that equitable estoppel may be applied to ERISA claims, at least where the claim relates to a single employer, unfunded welfare benefit plan such as the group

life insurance policy at issue here. *Black v. TIC Investment Corp.*, 900 F.2d 112 (7th Cir.1990). "An estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Id.* at 115. Plaintiffs have alleged facts sufficient to state such a claim here. They allege that Cigna represented in its July 14 letter that Van Den Eng was covered under its GUL policy for $168,000. They further allege that they, along with Van Den Eng, relied upon Cigna's statement and did not attempt to obtain additional insurance.

While these allegations may be sufficient to establish estoppel, however, the affidavits and other evidence submitted by plaintiffs do not establish them as a matter of law; the affidavits and other evidence do not show that the facts alleged by plaintiffs are undisputed. Plaintiffs' claim that they reasonably relied on the July 14 letter, for example, is controverted by Cigna's claim that it sent Van Den Eng a second letter within days informing him that the coverage information in the earlier letter was inaccurate and should be disregarded. There is also the fact that Van Den Eng never paid any increased premium for the additional coverage he requested. Was it reasonable to assume the coverage he requested was in effect when he had never been charged for it? Plaintiffs may have an explanation as to how, despite this fact, their reliance was reasonable, but further development of the record is needed before such a finding can be made.

■ As to plaintiffs' contention that Cigna's failure to process Van Den Eng's application within a reasonable time is sufficient by itself to estop it from denying coverage, it is unclear whether such a principle would apply in an ERISA case. Plaintiffs' argument is based primarily on the Wisconsin case of *Kukuska v. Home Mutual Hail–Tornado Ins. Co.*, 204 Wis.

166, 235 N.W. 403 (1931). In *Kukuska,* the Wisconsin Supreme Court held that an insurer was liable for hail damage to a farmer's crop when it failed to act on the farmer's application for hail insurance within a reasonable time. The farmer in that case had submitted an application for hail insurance, along with a pre-paid premium, which the insurer required. His application and premium were submitted on July 2, just prior to the hail season, but the insurer did not act on his application for nearly a month. Its denial of the application was received by the plaintiff on the same day that a violent hailstorm struck the farmer's crops. As the Wisconsin Supreme Court summarized the facts,

> The plaintiff received this letter from Grimm about 11 o'clock in the forenoon on the 1st day of August, 1928, and this was the first and only information plaintiff received that his application had not been accepted. About 4 o'clock in the afternoon of August 1, 1928, a violent hailstorm swept over plaintiff's farm, doing the damage complained of. *Other insurance companies were writing hail insurance, and, if the plaintiff had been notified of the rejection of his application within a reasonable time, he could have protected himself against such loss.* It is well known that the months of July and August constitute the most hazardous period for hailstorms in the locality where plaintiff's crops were situated.

235 N.W. at 404 (italics added). Thus, in the context of that case, where an applicant pre-paid his premium just prior to the time period for which he sought to be insured (July and August), the Supreme Court found that the insurer was under a quasi-contractual duty to act more rapidly.

Even aside from the fact that this is an ERISA case to which Wisconsin law does not apply, *Kukuska's* application here is questionable. In *Kukuska,* the farmer had

prepaid the premium and the need for prompt action on the part of the insurance company was clear. Here, by contrast, no premium was collected and there was no apparent urgency. Van Den Eng was in good health. In addition, as Cigna points out, the Wisconsin Supreme Court expressed doubt only two years later whether the rule in *Kukuska* would even apply in a case involving life insurance:

> Upon the facts in the Kukuska Case there could be no question as to the imperative need of diligence and speed in dealing with the application, having in mind the hazardous character of the season and the type of protection required by plaintiff. It is also clear that plaintiff in that case, by making application to the defendant, impaired, if not completely disabled, himself from making other applications for similar protection. *It may seriously be questioned whether the same conclusion applies to life insurance at all. Certainly there is not the pressing need for haste, if the insured is an acceptable risk, nor does the application to one company in any way foreclose the application to another for further life insurance.*

*Wallace v. Metropolitan Life Ins. Co.,* 212 Wis. 346, 248 N.W. 435, 436 (1933)(italics added).

Here, as in *Wallace,* there is no indication that Van Den Eng would have been precluded from obtaining other life insurance. And, not only did the plaintiffs fail to pre-pay for the additional coverage, they never paid any additional premiums at all. Thus, even if *Kukuska* was a part

of the federal common law applicable to ERISA cases, it is questionable whether it would apply here.[3]

On the other hand, other courts have also held that an insurer's unreasonable delay in processing an application for insurance can subject it to liability, and they have explicitly applied the rule to applications for life insurance. In *Royal Maccabees Life Ins. Co. v. Peterson,* 139 F.3d 568 (7th Cir.1998), for example, the Seventh Circuit noted:

> Under Illinois law, an insurance company like Royal has an affirmative duty to respond promptly to insurance applications. When a potential client applies for insurance, the company is legally obliged "to act with reasonable promptness on the application, either by providing the desirable coverage or by notifying the applicant of the rejection of the risk so that he may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere."

139 F.3d at 569 (quoting *Talbot v. Country Life Ins. Co.,* 8 Ill.App.3d 1062, 291 N.E.2d 830, 832 (1973)). According to the author of one treatise on insurance law, "[t]he better rule is to the effect that where application was made for a life policy with a beneficiary being designated to receive the proceeds, a cause of action lodges in such beneficiary, upon the applicant's death, for unreasonable delay on the part of the insurer, in accepting or rejecting such application." 12A *Appleman, Insurance Law and Practice* § 7222, p. 140 (1981).

---

**3.** I also note, however, that this case differs from *Wallace* in that Van Den Eng had applied for coverage under a group universal life policy offered through his employer. While Van Den Eng could have obtained coverage from another insurer, it made no sense for him go elsewhere when, through his employment, he could obtain coverage at a group rate and pay the premium using pre-tax

dollars. And even though no premium for the increased coverage had been received by Cigna, Van Den Eng claims that he had already authorized payroll deductions to be made for that purpose. That Cigna chose not to use this authorization, plaintiffs suggest, should not be held against Van Den Eng or his beneficiaries.

Although this same principle has yet to be applied in an ERISA case, the Seventh Circuit has held under ERISA that where an employee has been deterred by his employer's misrepresentation from electing retirement benefits to which he is otherwise entitled, the employee or his beneficiary can maintain an ERISA action to obtain them. In *Meredith v. Allsteel, Inc.*, 11 F.3d 1354 (7th Cir.1993), the court reversed the district court's summary judgment in favor of the employer on the claim of a number of employees that they were entitled to retirement benefits, despite their failure to make a timely election to retire, because the company had misinformed them of the cut-off date for the election. To prevail in such an action, the court said, the employees must "present the court with a factual record detailing their attempt to retire and the company's action in misinforming them." 11 F.3d at 1358. And in *Swaback v. American Information Technologies Corp.*, 103 F.3d 535 (7th Cir.1996), the court held that where a plan participant was entitled to a lump sum payment of his service pension, but failed to elect to receive it within the time allowed because his employer incorrectly informed him that he was ineligible for it, his beneficiary was entitled to bring an action under ERISA to recover it. The court reasoned:

> It is basic contract law that a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract. Here, it is the repeated misinformation that Ameritech provided Mr. Swaback, orally and in writing, that prevented the occurrence of the condition precedent—Mr. Swaback's written election of the lump sum at least thirty days before his retirement. Ameritech should not be able

to benefit from its inducement of the non-occurrence of the condition.

103 F.3d at 542–43.

Although plaintiffs here do not allege that Cigna misinformed Van Den Eng regarding his eligibility for increased insurance amounts under the GUL plan, they do claim that it was Cigna's error in handling his application that prevented his request for increased coverage from becoming effective before his death. Instead of processing the request, it appears Cigna inadvertently filed his application away, and no one discovered the error until plaintiffs advised Cigna of his death some three-and-a-half months later. Plaintiffs appear to be claiming that, had Cigna notified Van Den Eng in June that he had to re-date and re-sign his application, or that the information he provided was stale, he no doubt could have corrected the problem and Cigna would have accepted his request. But Cigna failed to do so. Plaintiffs thus claim that Cigna's conduct prevented the increased coverage from becoming effective.

In light of *Meredith* and *Swaback*, it appears that Cigna's failure to process Van Den Eng's application in a timely manner could give rise to liability. If misinforming an employee as to his eligibility for a benefit can provide a basis for recovery, it is hard to see why mishandling an application for a benefit would not. But here again, the record is not sufficient to allow summary judgment in favor of the plaintiffs. It is not clear whether Cigna's mishandling of the application was the cause of plaintiffs' loss. Would Cigna have accepted his application for increased coverage by the time of Van Den Eng's death had it not mishandled his application? Did Van Den Eng have an obligation to make a further inquiry? Especially if he received the July 19 letter advising him that his coverage was still only $40,000, wouldn't this have

alerted him to the need to inquire as to the status of his request? It is not even clear that Van Den Eng had fully committed to pay the premium for the increased coverage. Under these circumstances, it would be improper to grant plaintiffs' motion for summary judgment. Further development of the facts is needed before liability can be determined.

I therefore conclude that plaintiffs' motion for summary judgment should be denied. The clerk will set this matter for a status conference within the next week so that a firm trial date may be set.

**So ordered.**